## WESTERN COAL & MINING COMPANY *v.* PRUETT.

Opinion delivered February 14, 1910.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—Where the negligence of a fellow servant placed an employee in a position of apparent danger, and he was injured in attempting to escape therefrom, the fact that he would not have been injured if he had remained where he was does not convict him of contributory negligence as a matter of law, it being a question for the jury.

Appeal from Logan Circuit Court; *Jeptha H. Evans*, Judge; affirmed.

*Ira D. Oglesby,* for appellant.

*Sam R. Chew*, for appellee.

McCULLOCH, C. J. Appellee, George Pruett, was employed by appellant as a miner in its coal mine, and received injuries for which he sues to recover compensation. The jury returned a verdict in his favor, and appellant seeks a reversal, principally upon the ground that the evidence is not sufficient to warrant the verdict. It is insisted that, putting the evidence in its strongest light, it fails to establish any negligence on the part of appellant, and shows beyond dispute that appellee was guilty of contributory negligence. The facts of the case are as follows:

In the straight plane or entry of the mine there was a track along which the coal cars were propelled by use of an electric motor, coal being thus hauled from where it was mined to the bottom of the shaft. At the place where appellee was injured there were two parallel tracks, connected with the main track by a switch. One of these tracks was for empty cars to stand on, and was called the "empty track," and the other was for loaded cars. The motor would run back and forth between this place and the shaft of the mine for the purpose of carrying loaded cars to the shaft and bringing back empty cars. On the return trip, as the motor approached the switch, it would be opened, and a flying switch would be made, throwing the empty cars on to the empty track on the one side, and the motor would run on the loaded car track so as to couple to the loaded cars. It was the rule of the mine for this to be done between the hours of beginning work in the morning and four o'clock in the afternoon, when the miners quit work. The electric lights

burned when the motor was running, and there is some evidence that, even when the hour of four o'clock arrived, if the motor was out on a trip, it completed the trip, even if it passed the hour to do so.

There was a conflict in the testimony as to whether the accident occurred immediately before or after the hour named above. The evidence does show, however, that it was and had been for a long time the custom of the miners to quit work at four o'clock and to. assemble themselves at this switch, or parting, as it is called, where the empty cars are left, and to be hauled from that place to the bottom of the shaft in some of the empty cars drawn by mules, as the mules were there waiting to be taken to the barn. The miners would get in the empty cars and wait till the motor quit running, if it was running when they got there, so that the mules could pull the empty cars along the tracks.

On this occasion fifty or seventy-five of the miners had thus assembled, and had got into the empty cars. There was a space of five or six feet between the two tracks, and the mules were along in this space. The motor was out on a trip, and the lights were still burning, and the men were waiting for it to return, so that they could start on their journey toward the shaft. The motor came in sight up the plane with a string of cars, and was running at an unusual, and, as some of the witnesses described, a dangerous rate of speed. Many of the men, among whom was the plaintiff, became frightened at the unusual speed of the motor, thinking that in making the flying switch the empty cars would be thrown in on the empty car track with such great force as to cause a collision with the cars on which the men were seated and kill or injure them. Many of the men remained in the cars, and others jumped out and attempted to escape. None were injured except the plaintiff. In his fright he jumped out of an empty car and attempted to make his escape by climbing over one of the loaded cars, and as he did so the motor, after throwing the empty cars in the switch, came against the loaded cars with such violence as to cause them to bump together and catch appellee's foot between the couplings and crush it. The entry or plane was of sufficient width only to allow space for these two tracks, which were within a foot or two of the coal rib on each side.

We think this evidence is sufficient to convict the appellant of negligence and to acquit appellee of contributory negligence. The negligence consisted of the act of the motorman in running the motor and attempting the flying switch at such a dangerous rate of speed as to lead plaintiff and his companions to believe that a serious injury was about to be inflicted and to cause him to leave the empty cars and attempt to escape. It is true the evidence shows that if he had remained in the empty car he would not have been injured; but the high rate of speed at which the motor and empty cars approached placed him apparently in a situation of peril, and he had to choose whether he would brave the peril by remaining in his place or attempt to escape from it. The fact that the result shows he made a mistake in leaving the cars does not necessarily convict him of contributory negligence. That was a question for the jury to determine under all the circumstances.

The court refused to give two of appellant's instructions, but we are of the opinion that they are both fully covered by another of appellant's instructions which the court gave. We find no error in the record, and the judgment is affirmed.