PAUL HEYMANN *v.* HAMILTON NATIONAL BANK.[*]

(*Nashville.* December Term, 1924.)

1. **BANKS AND BANKING.** Bank accepting as pledge stock indorsed to pledgor held to acquire good title to extent of money advanced in good faith thereon.

Where stock indorsed by owner was wrongfully pledged with bank by indorsee, bank acquired good title to the extent of its advances of money made in good faith thereon. (*Post, pp. 23-25.*)

Case cited and approved: Banking Co. v. Hall, 119 Tenn., 548.

2. **ESTOPPEL.** Owner of stock indorsing it in blank, with power of attorney to make transfer, may be estopped to question title of one acquiring it from apparent owner.

Where stock is indorsed by owner in blank with assignment for value and with power of attorney to make transfer on books of company, and placed in hands of another person, good title may pass to innocent purchaser for value either by way of outright sale or pledge, regardless of delivery to him being unauthorized or constituting breach of trust; owner being estopped to question title so acquired. (*Post, pp. 25, 26.*)

Cases cited and approved: Cherry v. Frost, 75 Tenn., 1; Bank v. Farrington, 81 Tenn., 336; Caulkins v. Gas Co., 85 Tenn., 684; Planing Mill Co. v. Bank, 86 Tenn., 252; Smith v. Railroad, 91 Tenn., 222; Parker v. Bethel Hotel Co., 96 Tenn., 252; McClung v. Colwell, 107 Tenn., 592.

3. **CORPORATIONS.** Pledgee held to be holder for value of pledged stock only to extent of money lent thereon at time of pledge.

Pledgee of stock wrongfully pledged by person to whom it was indorsed by owner was holder for value of such stock as against owner only to extent of money lent thereon at time of pledge, and not to extent of past-due indebtedness from pledgor. (*Post, pp. 26, 27.*)

Heymann v. Hamilton Nat. Bank.

Case cited and approved:   Bank v. Johnston, 105 Tenn., 521.

4. **STATUTES.**   Stock Transfer Act held to contain subject beyond scope of title.

Uniform Stock Transfer Act being limited by its title to shares of stock in domestic corporations, and section 1 indicating that it is applicable only to stock in such corporations, section 22, making it relate to stock in corporations chartered in other States puts another subject in act beyond the scope of title, contrary to Constitution, article 2, section 17. (*Post pp.* 27, 28.)

Acts cited and construed.   Acts 1917, ch. 113.

Constitution cited and construed:   Art. 2, sec. 17.

5. **STATUTES.**   Elision from statute not permissible if result so attained will defeat legislative intent.

In construing statute, elision therefrom is not permissible, if result so attained defeats legislative intent.   (*Post, p.* 28.)

Cases cited and approved:   · Malone v. Williams, 118 Tenn., 390; Spicer v. King Bros., 136 Tenn., 408; Edwards v. Davis, 146 Tenn., 615.

6. **CORPORATIONS.**   Contract with reference to sales of stock are usually governed by law of place of contract.

While formal transfer of stock on books of corporation is regulated by law of domicile of corporation, contracts with reference to sales of stock are usually governed by law of place of contract.   (*Post,* · *pp.* 28, 29.)

Case cited and approved:   Moore v. Gennett, 2 Tenn. Ch., 375.

7. **CORPORATIONS.**   Remainder of proceeds of stock, wrongfully pledged to innocent pledgee, after paying loan thereon to be returned to owner.

Where stock indorsed by owner was wrongfully pledged by indorsee to innocent pledgee along with other property of pledgor, such property of pledgor should first be applied to payment of loan and

then pledged stock, and remainder, after payment of loan, should be paid to owner. (*Post*, p. 29.)

---

*Headnotes 1. Banks and Banking, 7 C. J., Section 452 (1926 Anno.); 2. Estoppel, 21 C. J., Section 181; 3. Corporations, 14 C. J., Section 1120; 4. Statutes, 36 Cyc., p. 1049; 5. Statutes, 36 Cyc., p. 977; 6. Corporations, 14 C. J., Section 1051; 7. Corporations, 14 C. J., Section 1147.

## FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. —Hon. W. B. Garvin, Chancellor.

Joe V. Williams and J. L. Levine, for appellant.

Cantrell, Meacham & Moon and Finlay & Campbell, for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

The complainant Heymann, who resided in New York, sent to one Silverman, a stockbroker in Chattanooga, ninety shares of Dixie Portland Cement Company stock. This stock was sent to Silverman upon representations of the latter that he had found a purchaser for same at a price satisfactory to complainant, and, upon further representation or promise by Silverman, that he would immediately remit proceeds of the sale to the complainant.

Instead of selling said stock sent to him as above, Silverman pledged thirty-nine shares of it to the Hamilton National Bank, along with some other stock, as security for a loan Silverman obtained from that institution. This record does not show what Silverman did with the remainder of the stock sent him by complainant. Only the thirty-nine shares aforesaid are involved in this suit.

It seems that Silverman was very much involved and committed suicide a day or two after pledging complainant's stock to the Hamilton National Bank.

This suit is brought by complainant to recover said thirty-nine shares of stock or the value thereof from defendant bank. The bank answered and denied complainant's right to the relief sought, on the ground that it had obtained these shares as an innocent purchaser for value. The chancellor sustained this defense and dismissed complainant's bill, from which decree he has appealed to this court.

The stock pledged to defendant bank consisted of several certificates, all issued to complainant Heymann, and on the back of each of the certificates the following appeared:

"For value received, ——— hereby sell, assign and transfer unto ——— ——— share of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint ——— to transfer the said stock on the books of the within named corporation with full power of substitution in the premises."

These indorsements had been dated and signed by the complainant when the certificates were sent to Silverman.

Although some criticism is made of the testimony of Preston, the bank officer making the loan to Silverman,

we think it fairly appears from this testimony that the bank loaned Silverman $5,500, evidenced by note, and that to secure this note Silverman attached to it, as collateral, fifty shares of Dixie Portland Cement Company stock (thirty-nine of which were Heymann's) and two hundred shares of Columbia Grafonola Company stock. The proof does not indicate that this is a case similar to *Banking Co.* v. *Hall,* 119 Tenn., 548, 108 S. W., 1068, in which the borrower merely got credit for the proceeds of the paper discounted. In the case before us it appears that Silverman actually got the money on the note aforesaid, and used it to take down certain shares of Coca Cola stock attached to a draft he had drawn on parties in New Orleans, which draft had been dishonored and returned.

While certificates of stock are not negotiable instruments, it is well settled in Tennessee that when they are indorsed by the owner, in blank, with an assignment for value, and with a power of attorney to make transfer on the books of the company, and placed in the hands of another person, such other person may confer good title to the shares represented by the certificates upon an innocent purchaser for value. It makes no difference so far as the rights of the innocent purchaser for value are concerned that the delivery to him was unauthorized or was a breach of trust. Good title may pass under these circumstances to an innocent purchaser for value either by way of outright sale or pledge. This is upon the theory that the owner of the certificates by so indorsing them in blank and placing them in the hands of another person has conferred upon that person all the *indicia* of

ownership, and is therefore estopped to question the title of one acquiring such stock for value and in good faith from the apparent owner. *Cherry* v. *Frost,* 75 Tenn., (7 Lea), 1; *Bank* v. *Farrington,* 81 Tenn. (13 Lea), 336; *Caulkins* v. *Gas Co.,* 85 Tenn., 684, 4 S. W., 287, 4 Am. St. Rep., 786; *Planing Mill Co.* v. *Bank,* 86 Tenn., 252, 6 S. W., 340, 6 Am. St. Rep., 835; *Smith* v. *Railroad,* 91 Tenn., 222, 118 S. W., 546; *Parker* v. *Bethel Hotel Co.,* 96 Tenn., 252, 34 S. W., 209, 31 L. R. A., 706; *McClung* v. *Colwell,* 107 Tenn., 592, 64 S. W., 890, 89 Am. St. Rep., 961.

We think there is nothing in the indorsement appearing on the certificates in suit which distinguishes it from the indorsements on certificates involved in the cases just cited. So far then as complainant's stock was pledged to secure money advanced in good faith thereupon by the bank, the bank obtained good title thereto.

It appears, however, from the testimony of Preston, the bank officer, that the proceeds of the collateral deposited to secure the $5,500 loan was not all required for the discharge of this loan. There was a balance left which was applied to other indebtedness due by Silverman to the bank, this being done under authority of a clause in the note executed by Silverman.

We think the bank had no right to make such application of the balance of the proceeds of complainant's stock after the $5,500 note was paid. In other words, the bank was a purchaser or holder for value of complainant's stock only to the extent that said stock was pledged to secure money loaned at the time. As to the past due indebtedness owing by Silverman to the bank, it was not a holder for value of complainant's stock.

It was conceded by the court in *Cherry* v. *Frost,* supra, that an old indebtedness due from a pledgor to pledgee did not constitute a valuable consideration so as to give the pledgee good title, as against the real owner, the stock wrongfully pledged by the apparent owner. Past due indebtedness was not in Tennessee treated as "value" in the negotiation of a promissory note, so as to make one, taking such an instrument for an antecedent debt, an innocent holder for value, prior to the adoption of the Negotiable Instruments Act. *Bank* v. *Johnston,* 105. Tenn., 521, 59 S. W., 131.

It is said, however, that chapter 113 of the Acts of 1917, called the Uniform Stock Transfer Act, changes the rule just stated, and that under that act an antecedent or pre-existing obligation is declared to be "value."

The Dixie Portland Cement Company is chartered under the laws of West Virginia. Chapter 113 of the Acts of 1917 is entitled, "An act to make uniform with the laws of other States the law of transfer of shares of stock in private corporations chartered, organized, and existing under and by virtue of the laws of the State of Tennessee." Likewise section 1 of the act of 1917 indicates that the provisions of the statute are only applicable to certificates of stock in Tennessee corporations.

Section 22, containing definitions of terms employed in the act, provides that unless the context or subject-matter otherwise requires:

"Certificate means a certificate of stock in a corporation organized under the laws of this State or of another State whose laws are consistent with this act."

In the same section "shares" are defined as shares of stock in a corporation organized under the laws of this State or of another State with consistent laws.

Since the caption of the act limits its scope to provisions with reference to shares of stock in Tennessee corporations, the requirement of section 22, making its provisions relate to shares of stock in corporations chartered in other States, puts another subject in the act, beyond the scope of the title, and renders it unconstitutional. Constitution, article 2, section 17.

The Uniform Stock Transfer Act proposed by the American Bar Association was not intended to be limited to legislation with reference to shares of stock in corporations organized in the particular State of its enactment. The Uniform Act was changed as indicated before its adoption in Tennessee. 6 U. L. A., p. 4.

If any effect is to be given to the definitions of certificates and shares contained in section 22, the act can only be sustained by eliding such provisions. Some of us do not believe that elision is permissible to save an act otherwise bad under the two-subject clause of the Constitution. Certainly elision is not permissible in any case if the result so attained will defeat the legislative intent. *Malone* v. *Williams,* 118 Tenn., 390, 103 S. W., 798; *Spicer* v. *King Bros.,* 136 Tenn., 408, 189 S. W., 865; *Edwards* v. *Davis,* 146 Tenn., 615, 244 S. W., 35, and cases cited.

While the formal transfer of stock on the books of a corporation is regulated by the law of the domicile of the corporation, contracts with reference to the sale of shares of stock are usually governed by the law of the place of

contract. 14 C. J., 681; 3 Clark & Marshall on Corporations, p. 1733; *Moore* v. *Gennett,* 2 Tenn. Ch., 375.

A large proportion of shares of stock bought and sold in Tennessee is stock of corporations organized under the laws of other States. We cannot believe that the legislature intended to establish one set of rules to regulate trading in stock of Tennessee corporations and to leave in force another and different set of rules to regulate trading in stock of foreign corporations. This, however, would be the effect of chapter 113 of the Acts of 1917 if we resort to the doctrine of elision as suggested. We therefore feel constrained to declare said act unconstitutional and void.

As said before, Silverman pledged, to secure the $5,500 note, two hundred shares of Columbia Grafonola Company Stock, and fifty shares Dixie Portland Cement Company stock, thirty-nine shares of the latter belonging to complainant. Out of the proceeds of the sale of the stock pledged, the proceeds of the stock that belonged to Silverman should first be applied to the payment of the $5,500 note. The proceeds of complainant's stock should then be applied to the balance due on the note, and the remainder of such proceeds turned over to the complainant.

The chancellor's decree will accordingly be modified as indicated, and the cause remanded for further proceedings. Defendant will pay one-third of the costs of appeal and the complainant two-thirds. The chancellor will adjudge the costs below.

CHAMBLISS, J., did not participate in this decision.