LIFE & CASUALTY INS. CO. OF TENNESSEE *v.* McCORMACK, COM'R OF INS. AND BANKING, *et al.*

(*Nashville,* December Term, 1938.)

Opinion filed March 4, 1939.

WHITE & HOWARD, WALKER & HOOKER and Jos. J. LU-
TIN, of Nashville, for intervening petitioners, appellants.

McCONNICO, HATCHER & WALLER, of Nashville, for Life
& Casualty Ins. Co., appellees.

MR. JUSTICE DeHAVEN delivered the opinion of the Court.

Complainant, Life and Casualty Insurance Company of Tennessee, filed its original bill herein against James M. McCormack, Commissioner of Insurance and Banking of Tennessee, challenging the constitutionality of Chapter 177, Public Acts 1937, upon the grounds that it was violative of Article 1, section 8 and section 20, and Article 11, section 8, of the Constitution of Tennessee, and Article 1, section 10, of the Constitution of the United States and the Fourteenth Amendment. The bill set up the fact that there are two voting trusts, called respectively Voting Trust A and Voting Trust B in the stock of the complainant company, and prayed a declaratory judgment to determine whether or not said voting trusts are legal, and how Chapter 177, Public Acts 1937, if constitutional, applies to the same.

The chancellor held the Act in question unconstitutional and that voting Trusts A and B were valid.

Appellants are certain stockholders in the complainant company who were permitted to intervene as defendants in the cause.

The two voting trust agreements were filed as exhibits to the bill. Voting Trust A is dated November 6, 1934, and under its terms is to terminate January 1, 1940. Voting Trust B is dated September 26, 1936, and under its terms is to continue in force until September 1, 1946. Certain of the stockholders who had deposited their stock under Voting Trust A agreed that this same stock should come under Voting Trust B immediately after the termination of Voting Trust A; and as to this stock, Voting Trust B does not become effective until the termination

of Voting Trust A. Some of the trustees under Voting Trust A were also trustees under Voting Trust B.

Prior to the passage of Chapter 90, Public Acts 1929, voting trusts were not sanctioned by statute in Tennessee. This Act was the general corporation law and appears as sections 3709-3771 of the Code. Section 22 of the original act which appears as section 3733 of the Code authorized the formation of voting trusts. Chapter 90, Public Acts 1929, excepted insurance companies from its provisions, but the Code contains in section 3886 a provision specifically relating section 3733 of the Code to corporations organized under the article which includes insurance companies.

Prior to the passage of Chapter 90, Public Acts 1929, there was only one voting trust in the stock of a domestic insurance company. This was a voting trust created by stockholders of the National Life and Accident Insurance Company, by agreement of date December 20, 1928, to exist for twenty-one years.

Under their first assignment of error appellants contend that the chancellor was in error in holding Chapter 177, Public Acts 1937, unconstitutional.

The title to said Act is as follows:

"An Act to declare the policy of this State with respect to voting trust agreements by stockholders of Domestic Life Insurance Companies, to prohibit the execution of voting trust agreements by stockholders of such companies hereafter, to limit and regulate the powers of voting trustees acting under voting trust agreements heretofore executed by stockholders of such companies, to fix a penalty for the violation of this Act, to prescribe additional duties of the Commissioner of Insurance and Banking and, generally, to provide for the

protection of the policyholders of such corporation now or hereafter operating under voting trust agreements."

The subject of the legislation, as set forth in the title of the Act, is to prohibit absolutely the execution of voting trust agreements by stockholders of domestic life insurance companies "hereafter," and to limit and regulate the powers of voting trustees acting under voting trust agreements "heretofore" executed by stockholders of such companies.

Section 8 of the Act is as follows:

"Be it further enacted, That the provisions of this Act shall not apply to a domestic life insurance corporation acting under any voting trust which was legally in existence prior to the passage of Chapter 90 of the Public Acts of 1929 of the General Assembly of the State of Tennessee, or any renewal or extension of such voting trust; provided, that a copy of such voting trust is filed with and submitted for the approval of the Commissioner of Insurance and Banking of the State of Tennessee within ninety days after the effective date of this Act, or after such renewal or extension; and provided further, that such voting trust shall receive the approvel of said Commissioner."

Appellee insists that section 8 of the Act is unconstitutional because violative of Article 1, section 8, and Article 11, section 8, of the Constitution of Tennessee and the Fourteenth Amendment to the Constitution of the United States in that a class distinction is made between voting trust agreements "legally in existence" prior to the passage of Chapter 90, Public Acts 1929, and those made subsequent to the passage of that Act. Classification in legislation must not be mere arbitrary selection. It must have some basis which bears a natural

and reasonable relation to the object sought to be accomplished. *State* v. *Nashville Railroad*, 124 Tenn., 1, 9, 135 S. W., 773, Ann. Cas., 1912D, 805; *Fleming* v. *Memphis*, 126 Tenn., 331, 148 S. W., 1057, 42 L. R. A. (N. S.), 493, Ann. Cas., 1913D, 1306. This principle is too well established by our cases to warrant further discussion.

 We are unable to conceive any reason why the trustees under a voting agreement made when there was no statute authorizing the same, or any decision of this court holding a so-called common-law voting trust valid in this State, should be exempt from the regulations imposed by the Act on trustees under a voting trust created under authority of statute.

Not only does section 8 exclude from the operation of the Act a voting trust which was legally in existence prior to the passage of Chapter 90, Public Acts 1929, but likewise excludes from the operation of the Act "any renewal or extension of such voting trust." Thus the trustees of such a voting trust, by the process of a renewal or extension of the voting trust agreement, escape in perpetrating the limitations and regulations upon their powers imposed by the Act upon trustees of voting trusts created subsequent to the enactment of Chapter 90, Public Acts 1929. The rights, privileges, immunities, and exemptions thus granted to the trustees of a voting trust in existence prior to the enactment of Chapter 90, Public Acts 1929, are other than such as are by the same law (Chapter 177, Acts 1937) extended to trustees under voting trust agreements subsequently executed.

Appellants contend that section 8 of the statute makes a reasonable classification. It is argued that the Legislature attempted a classification of voting trusts based on the fact of whether or not the voting trusts were com-

mon-law voting trusts or organized under the statute. This argument, however, does not reach the question of the legality of exemptions granted by the Act to trustees under so-called common-law trusts from the regulations and limitations placed by the Act upon the powers of trustees of statutory voting trusts.

Section 3 of the Act in question prohibits a trustee acting under a voting trust agreement from having any financial dealings or business transactions with any person, corporation, or partnership in which he or any other voting trustees associated with him shall be connected, either directly or indirectly, except where the voting trustees together own or have the legal power to vote as much as one fourth of all the outstanding stock of the corporation. Section 4 of the Act declares a violation of section 3 to be a misdemeanor punishable by a fine of $500, or imprisonment for not less than thirty days nor more than six months, or both.

Section 6 of the Act provides that a voting trustee shall not be eligible to serve as an executive officer, a member of the board of directors, or a member of any executive committee, for a period of two years following his resignation or dismissal as such voting trustee, except that the section shall not apply to any executive officer, or member of any executive committee, who held such office prior to his election as such voting trustee.

The Act contains other regulations, but the above are sufficient to show the unreasonable and capricious classification contained in section 8. We think that for this reason section 8 is unconstitutional as violative of the constitutional provisions above mentioned.

The question then arises whether section 8 may be elided so as to save the balance of the Act. It is the

settled rule in this State that the court will not elide a portion of a statute unless it is evident that the Legislature would have enacted the statute had the invalid part been omitted. *Williams* v. *State,* 155 Tenn., 364, 293 S. W., 757; *Richardson* v. *Young,* 122 Tenn., 471, 125 S. W., 664. Chapter 177, Public Acts 1937, contains no separability clause, and the presumption is that the Legislature would not have enacted the statute at all except in its completed form. *Williams* v. *Standard Oil Co.,* 278 U. S., 235, 49 S. Ct., 115, 73 L. Ed., 287, 60 A. L. R., 596. Section 8 fixes the application of the statute. It is far from evident that the Legislature would have enacted the statute had it applied to voting trusts created prior to Chapter 90, Public Acts 1929. Certainly, we are unable to say that the Legislature would have passed the Act if section 8 had been omitted. *Spicer* v. *King Bros. & Co.,* 136 Tenn., 408, 189 S. W., 865; *Daniel* v. *Larsen,* 157 Tenn., 690, 12 S. W. (2d), 386; *Spring Hill Cemetery* v. *Lindsey,* 162 Tenn., 420, 37 S. W. (2d), 111.

It is argued that appellee is not affected by the provisions contained in section 8 of the Act and is not in a position, therefore, to raise the question of unconstitutionality. But, appellee is directly affected by the arbitrary classification contained in the Act. We see no merit in this contention.

It is our conclusion that section 8 cannot be elided from the Act and on account of its unconstitutionality the whole Act must fall.

The remaining question is whether Voting Trusts A and B comply with section 3733 of the Code and are not against public policy. Appellants make the argument that in order for voting trusts to legally exist all stockholders in the company must at all times be able to join

therein and it is now impossible for additional stockholders to join in these voting trusts. This contention, of course, is predicated on Chapter 177, Public Acts 1937, which we hold to be unconstitutional. It is insisted, however, that Voting Trust B is illegal in that Code 3733 only permits the creation of voting trusts between stockholders in the stock of a corporation, and Voting Trust B permits the holders of voting trust certificates in Voting Trust A to join the trust. Voting Trust A terminates by its terms on January 1, 1940. Voting Trust B terminates September 1, 1946, and the trustees thereunder have no right to vote the stock of any stockholder who has become a party to Voting Trust A, during the life of Voting Trust A. With reference to such stock, Voting Trust B is expressly made subject to Voting Trust Agreement A. In effect, the trustees under Voting Trust B simply held trust certificates issued under Trust A until its dissolution, and then, and not until then, is the stock of such stockholders subject to be voted by the trustees in Voting Trust B. We are unable to see anything illegal in this arrangement. Other stockholders than the holders of certificates under Trust A may join Trust B.

Upon consideration of all of the assignments of error, we are constrained to overrule the same and affirm the decree of the chancellor.