CITY OF NASHVILLE *v.* BROWNING, Governor.

*(Nashville*, December Term, 1950.)

Opinion filed July 27, 1951.

598

E. C. Yokley, of Nashville, for City of Nashville.

R. C. Smith, Jr., of Knoxville, and E. K. Meacham and J. W. Anderson, both of Chattanooga, for City of Chattanooga.

Denney, Leftwich & Glasgow, of Nashville, for complainant.

Roy H. Beeler, Attorney General, Knox Bigham and Allison B. Humphreys, Jr., Assistant Attorneys General, and Horace Osment, County Attorney, of Nashville, for defendants.

MR. JUSTICE GAILOR delivered the opinion of the Court.

Under the Declaratory Judgments Act, Code, Sec. 8835 et seq., the bill in this cause was filed in the Chancery Court of Davidson County by the City of Nashville, to have the Chancellor insert two amendments in the General Education Bill, Chapter 132, Public Acts of 1951, which were not in the Bill signed by the Speakers and the Governor. The defendants are the Governor of the State, the Secretary of State, the Speakers of the two Houses of the Legislature, and other public officials and Davidson County.

The General Education Bill of 1951, which was passed as House Bill No. 573, following similar laws of former years, in Sections 14 and 15, provided for division of State and County school funds in ''non-equalizing'' counties, between Departments of Education of cities and counties for the first eight grades only, thereby giving to the counties all high school funds, or funds for the last four grades. In other words, the proposed bill provided for the division of elementary school funds between the cities and counties on the basis of average daily attendance, but proposed to give all high school funds to the counties. The distinction between ''equalizing'' and ''non-equalizing'' counties was maintained as it had been established in the General Education Bill, Chapter 91, Public Acts of 1949, and the only ''non-equalizing'' counties which are affected by the present controversy are Davidson, Hamilton and Knox, and the cities of Nashville, Chattanooga and Knoxville.

When House Bill No. 573, which was prepared and presented to the Legislature with the approval of the State Department of Education, had passed two readings in the House and was put on third and final reading for passage, it was so amended that Nashville, Chattanooga and Knoxville would participate in the distribution of high school funds as those cities did in the distribution of elementary school funds. As amended, the Bill was passed by the House and sent to the Senate. To effect the change of the bill as originally proposed, two amendments had been necessary, one to Section 14, and the other to Section 15 of the Bill. We shall refer to these two amendments hereinafter as House Amendments.

In the Senate, after the House Bill had been made to conform with the Senate Bill, which had already passed two readings, the conforming Bill was placed on third and final reading, and the Senate refused to concur in the House Amendment, but passed the Bill in its original form, providing for the division of elementary school funds only. To effect this, the Senate passed two Amendments, one to Section 14, and the other to Section 15, and we will refer hereinafter to those two Amendments as Senate Amendments.

The House refused to concur in the Bill as passed by the Senate and to compose the differences between the two Bodies, conference committees were appointed, with the final result that the Senate Journal shows that that body finally passed the Bill with the House Amendments.

Therefore, as the proposed legislation was sent to be engrossed by the Engrossing Clerks of the House, the House Amendments were a part of the Bill. Next, the Chairman of the House Committee on Enrolled Bills, according to the Journal, certified that he had carefully

compared House Bill No. 573, found it correctly engrossed and ready for the signature of the Speaker of the House. The Speaker of the House then signed the Bill, as did the Speaker of the Senate, and the Bill was submitted to the Governor, who signed the Bill and returned it to the House with his approval.

After the Legislature adjourned, it was discovered that House Bill No. 573, (1) as certified by the Chairman of the House Committee on Enrolled Bills, (2) as signed by the Speakers of both Houses, (3) as signed and approved by the Governor, did not contain the House Amendments providing for division of high school funds, but was the bill as it had been originally introduced by the State Board of Education, providing for the division of State and county funds in Davidson, Hamilton and Knox counties through the first eight grades only.

From the legislative Journal two things are undisputed: (1) That the bill as it was signed by the Speakers and Governor, never passed the House. (2) That the House Amendments providing for the division of high school funds were never signed and approved by the Speakers of the two Houses and the Governor.

Under these facts and circumstances, which are not in dispute, the City of Nashville filed this bill in the Chancery Court, seeking to have the Chancellor insert in the Bill, Chapter 132, Public Acts of 1951, the two House Amendments which had passed both branches of the Legislature, but which had never received the approval or signature of the Speakers or the Governor. The Chancellor heard the cause on bill and answer, and held that (1) since the House Amendments were not a part of the Enrolled Bill, and not signed by the Speakers and the Governor, that they were not law. (2) That since the

Senate Amendments, though incorporated in the Enrolled Bill, had not passed the House, that under the Doctrine of Elision, they should be struck down, and the rest of House Bill No. 573, approved as the General Education Bill, Chapter 132, Public Acts of 1951.

From the Chancellor's decree, the complainant and all defendants except Davidson County, have appealed. The case has been ably argued and exhaustively briefed.

The first assignment of error of the complainant, City of Nashville, is as follows:

"The Court erred· in refusing to grant complainant's second prayer of relief, as follows:

" 'The Court declare the rights of the parties and that, if so advised, the Court declare that the Amendments Nos. 1 and 10 introduced in the House, passed and concurred in by both the Senate and the House of Representatives, and *inadvertently omitted* from the copy of the Bill transmitted to the Governor for signature, be declared a part of said Chapter 132 of the Public Acts of 1951, and further be declared to be an effective portion of the general laws of the State of Tennessee, and that the defendant James H. Cummings be required to enroll, certify and publish said Act as passed.' " (Our emphasis.)

This assignment contains a misstatement which is fundamental. If the undisputed record presented an "inadvertent omission" from an otherwise regular and valid engrossed bill, we should have an entirely different question from the one presented here; where the undisputed record shows that the two Houses of the Legislature passed one bill and the Speakers and the Governor signed another.

■ Under our Constitution, the mere passage of a bill by both Houses of the Legislature, does not constitute legislative due process, nor make a law. The enactment of a statutory law is complete only after combined action of the Legislature and Executive Branches of the Government. All the elements of the legislative process are set out at length and made mandatory by the Constitution. The section of the Constitution which determines the present controversy is as follows: Section 18, Article II: "Every bill shall be read once on three different days, and be passed each time in the House where it originated before transmission to the other. No bill shall become a law until it shall have been read and passed, on three different days in each House, and shall have received on its final passage in each House the assent of a majority of all the members to which that House shall be entitled under this Constitution; and shall have been signed by the respective Speakers in open session—the fact of such signing to be noted on the Journal; and shall have received the approval of the Governor, or shall have been otherwise passed under the provisions of this Constitution."

Since the House Amendments for which the complainants contend under this assignment, were never signed by the Speakers, nor presented to the Governor, and since those elements were mandatory prerequisites of the constitutional enactment of a statute, the correctness of the Chancellor's decree holding that the House Amendments are not the law, needs no other support than a reading of the foregoing section of the Constitution.

■ A bill signed by the Speakers when different from that passed by the Senate and House, is no law. *Brewer* v. *Mayor and Aldermen of Huntingdon*, 86 Tenn. 732,

9 S. W. 166; *Weaver* v. *Davidson County,* 104 Tenn. 315, 327, 59 S. W. 1105.

 A legislative Act does not become a law before its approval by the Governor, or its constitutional passage over his objection. The Executive is thus, under Section 18, of Article II, a "necessary constituent" of the law-making power. *City of Memphis* v. *United States,* 97 U. S. 293, 24 L. Ed. 920, 923. To the same effect are our cases of *Hill* v. *State,* 73 Tenn. 725, 729; *Logan* v. *State,* 50 Tenn. 442, 444. Compare Text and Notes on Cases in Cooley's Constitutional Limitations, 8th Ed., Vol. 1, pp. 320, 321. Under the foregoing authorities, we are compelled to overrule the assignment of error made by the complainant, the City of Nashville, and quoted above.

The remaining question presented by the appeal is whether the Chancellor erred in applying the so-called Doctrine of Elision, that is whether the Act, as signed by the Governor, being admittedly void and unconstitutional as to Sections 14 and 15 (the Senate Amendments) was void in toto, or whether those sections might be elided, and the remainder of the Act set up as the valid and complete "General Education Bill of 1951."

All parties who perfected appeals, which is to say, all parties to the litigation except Davidson County, insist that the Chancellor erred in applying the Doctrine of Elision, and that the entire Act as signed, was void and unconstitutional.

 The Doctrine of Elision is based upon a presumption and is thus explained in one of our well-known cases:

"The rule upon this subject is thus accurately stated in the fourth headnote to *Jones* v. [*City of*] *Memphis,* 101 Tenn. 188, 47 S. W. 138, viz.: 'Where a single statute, or several statutes constituting one scheme, contain one or

more unconstitutional provisions, the obnoxious pro-
visions will be eliminated, and the statute or scheme sus-
tained as to the rest, unless the provisions are deemed so
essential, and are so interwoven with others, *that it
cannot be reasonably presumed* the Legislature intended
the statute to operate otherwise than as a whole, and,
in that event, the entire statute or scheme falls.' '' (Our
emphasis.) *Lindsay* v. *Allen,* 112 Tenn. 637, 647, 82
S. W. 171, 172.

''In determining whether part of an act can stand where
another part has been held unconstitutional, a different
rule as to presumption is recognized from that which
obtains where the whole act is being considered. The
general rule that legislative acts are primarily presumed
to be constitutional, and that all intendments are to be
made in favor of the act to give it effect according to the
intent of the lawmaking power, does not apply in such
cases, as the upholding of part of an act is not favored;
and where a part has been held unconstitutional, and the
remaining portion comes up for consideration as to
whether it can stand as an independent proposition, the
presumptions are generally against it, and it will not be
sustained unless that which remains is complete in itself
and capable of being executed in accordance with the
apparent legislative intent wholly independent of that
which was rejected.'' Lewis' Sutherland Statutory Con-
struction, Vol. 1, p. 583; *Malone* v. *Williams,* 118 Tenn.
390, 465, 103 S. W. 798.

The Doctrine of Elision is applied with hesitation,
*Mensi* v. *Walker,* 160 Tenn. 468, 26 S. W. (2d) 132.

Not only is there no presumption that the Legislature
would have passed the statute as elided, but there is the
contrary presumption that the Legislature would not

606

have passed the statute as elided, *Life & Casualty Ins. Co. of Tenn.* v. *McCormack*, 174 Tenn. 327, 334, 125 S. W. (2d) 151.

The rule that the Court can only apply the Doctrine of Elision where there is a reasonable presumption that the Legislature would have passed the Act without the invalid provisions, is laid down in a number of other Tennessee cases; *Williams* v. *State*, 155 Tenn. 364, 293 S. W. 757; *Heymann* v. *Hamilton Natl. Bank*, 151 Tenn. 21, 266 S. W. 1043; *Edwards* v. *Davis*, 146 Tenn. 615, 244 S. W. 359; *Richardson* v. *Young*, 122 Tenn. 471, 125 S. W. 664; *Reelfoot Lake Levee Dist.* v. *Dawson*, 97 Tenn. 151, 179, 36 S. W. 1041, 34 L. R. A. 725; *Franklin County* v. *Nashville, C. & St. L. Railroad*, 80 Tenn. 521, 531; *Neely* v. *State*, 63 Tenn. 174, 175; *Bouldin & Sanders* v. *Lockhart, Chr., etc.*, 62 Tenn. 262, 280.

█ In the present case, there is no room for a presumption since the complete journal entries furnish positive evidence that without Sections 14 and 15, either in the form of the House Amendments, or the Senate Amendments, the Legislature would never have passed the Act at all. The very meat and substance of the controversy between the two Houses was over the form that those two sections should take, and without a settlement of the controversy between the Houses, the Act would never have been passed. With these undisputed facts before us, it is impossible for us to presume that the Legislature would have passed the Act with the elision of the controverted sections, and therefore, it is impossible for us to apply the Doctrine of Elision.

We have been cited to no Tennessee case where the Doctrine of Elision has been applied to an Act held unconstitutional for want of action by the Executive.

Though decisions from the Courts of other states are informative and not controlling, *Wright* v. *Cunningham*, 115 Tenn. 445, 91 S. W. 293; *Lipscomb* v. *Dean*, 69 Tenn. 546, 553, the great majority of the Courts of other states have held that the entire Act is invalidated where there is a material variance between the Bill presented to the Chief Executive and that passed by the Legislature, *King Lumber Co.* v. *Crow*, 155 Ala. 504, 46 So. 646, 130 Am. St. Rep. 65; *Bull* v. *King*, 205 Minn. 427, 286 N. W. 311.

For the reasons stated, we are compelled to hold that House Bill 573, Chapter 132, Public Acts of 1951, is void and unconstitutional in its entirety, and the Chancellor's decree will be modified accordingly. The complainant and defendants will divide the costs.

All concur.