WHITE STORES, INC.

*v.*

Z. D. ATKINS, Commissioner, et al.

(*Nashville,* December Term, 1956.)

Opinion filed April 1, 1957.

EGERTON, McAFEE, ARMISTEAD & DAVIS, Knoxville, for appellants.

GEORGE F. McCANLESS, Attorney General, ALLISON B. HUMPHREYS, Solicitor General, MILTON P. RICE, Assistant Attorney General, for appellees.

## PER CURIAM.

The succinct and well reasoned opinion of the Chancellor has answered all questions raised herein as well as we could do. To rewrite the opinion would serve no useful purpose and we, therefore, adopt his opinion as the opinion of this Court. *Boillin-Harrison Co. v. Lewis & Co.*, 182 Tenn. 342, 345, 187 S.W.2d 17.

"Complainant's suit is for a declaratory judgment upon the question of whether or not it, as a chain store corporation, owning and operating both a wholesale division, consisting of a central warehouse, and a retail division, consisting of 42 retail stores, or outlets, is entitled to the privileges of a 'wholesale dealer and job-

ber' under the provisions of Section 67-3106 T.C.A., and particularly the compensation allowed such wholesale dealers and jobbers thereunder for selling and affixing tobacco stamps to tobacco products.

"Complainant is a single corporation and owns and maintains a central warehouse, which it operates in a manner which is, with one exception, identical to that of a wholesale seller or distributor of products; the single exception being that while it is willing to sell to other retail outlets than its own, the facts are it has never made any such sales and does not plan or expect to make any in the future. It also owns and operates forty-two retail stores or outlets in various locations in Tennessee, through which it distributes the products it buys from manufacturers to the consuming public. Its manner of operation, between its wholesale and retail divisions, is described by its president in his deposition, as follows:

" 'Q. Will you please briefly just explain your method of operations between your wholesale house, and your retail outlets? A. Well, of course our wholesale house received all of our merchandise that we purchase from manufacturers, supplies and processers. We receive that merchandise in trailer loads, car loads and of course some L.C.L., that is less than car load shipment. It is maintained there under a rather modern and rigid control of I.B.M. machinery, which tells us at all times exactly how much merchandise we have in that warehouse, when it moves, what merchandise is on the road coming to us—in fact, what contracts are made for the year against which we withdraw these various products.

" 'As the merchandise is maintained and cared for at this warehouse, we receive from our retail stores an order sheet that has been filled out by them, pre-imprinted, and as we receive this order sheet, through a rather interesting and intricate process of the I.B.M. machinery, we are able to transpose that order onto a punch card, and this punch card is our part of that particular item from there on to its destination at the retail store level.

" 'It serves as our billing unit, our inventory control from the warehouse to the retail store level. We are no different from the average wholesale jobber to other retail stores. They receive their merchandise as we do, and in many cases from just about the same manufacturers and suppliers and producers. They do not all use the punch card control method. I believe K.M.C. Company in town does, but they still receive their merchandise as we do, and they distribute their merchandise or similar products and similar retail stores, just as we do.

" 'Q. In other words, when one of your retail stores need an item, they will send an order in to the wholesale department? A. Yes, sir.

" 'Q. And that order is filled? A. Those instructions come from the manager of our stores. We wait for instructions just like a wholesale jobber would wait instructions from the retailer perhaps that turns his order in to a jobber salesman.

" 'Q. When merchandise is issued to the retail store, is that merchandise charged to that particular store? A. Yes, we must have an account of every one of our

stores, and if the load of merchandise, for instance, goes to our uptown stores, some two blocks away from this point, it is charged to that store, which is known as Store No. 1.'

"Complainant thus distributes practically all of the products it sells, its president estimating that less than ten per cent of its total products are purchased by its retail outlets directly from suppliers or manufacturers.

"Complainant makes no retail sales from its wholesale warehouses.

"On May 3, 1954, complainant applied to the defendant, Commissioner, for a permit or license to sell cigarettes as a wholesale dealer, and which license would entitle complainant to receive the compensation allowed wholesalers and jobbers for selling cigarette stamps. On June 7, 1954, the defendant, Commissioner, having sought and obtained the opinion and advice of the office of the Attorney-General of the State of Tennessee approved complainant's application and issued it such permit or license. Complainant exercised the privileges accorded it by such permit, or license, from June 7, 1954, but shortly before the filing of the original bill in this cause it was advised by the defendant Commissioner, that his previous action in granting the license, or permit, was in error, and that he did not intend to renew complainant's wholesale distributor's license or permit. The record shows that the defendant Commissioner, took this latter action upon the advice of the Attorney-General's Office.

"The office of the Attorney-General, with commendable frankness, concedes its earlier advice to the defend-

ant, Commissioner, and its change of opinion and later advice to him regarding complainant's status as a wholesale distributor. That office very properly has joined with the defendant Commissioner in submitting this matter for declaratory judgment with respect to the subject matter of this cause.

"That the question involved is serious and real and one proper for judicial determination is indicated by the fact that it involves the determination of whether or not the Court, through statutory construction, should elide the word 'only' from the statute defining wholesale dealers and jobbers, Section 67-3101(f), T.C.A., providing as follows:

" 'The term "wholesale dealer and jobber" means persons, firms or corporations who sell at wholesale only any one or more of the articles taxed herein to licensed retail dealers for the purpose of resale only.' (Emphasis supplied.)

"This problem of statutory construction is always a difficult one.

"The complainant's attack upon the action of the defendant Commissioner, and the statutory authority under which he acted is two-pronged. The complainant first says that the defendant Commissioner's, act in refusing to renew its permit was wrongful because under the statute it is a 'wholesale dealer and jobber' within the meaning thereof, and as such is entitled to a renewal of its license, or permit. But, says the complainant, if it is not correct in this contention, and if the statute be construed so as to exclude complainant from the definition of a 'wholesale dealer and jobber' thereunder and

the privileges resulting therefrom, then the act, itself, is violative of Article I, Section 8, and Article XI, Section 8, of the Constitution of Tennessee, and also the Fourteenth Amendment to the Constitution of the United States, because it discriminates against complainant and in favor of other wholesale dealers similarly situated.

"The defense made is that the complainant is not a wholesaler under any possible construction of the statute, because it is not engaged in selling one or more of the articles taxed to licensed retail dealers for the purpose of resale only, and that a construction of the Act which excludes complainant as a wholesaler does not render the same unconstitutional for the reasons assigned, because the classification in the taxing statute is a reasonable one upon a ground which has been recognized and sustained by the Supreme Court of Tennessee in *Great Atlantic & Pacific Tea Co. v. McCanless,* 178 Tenn. 354, 157 S.W.2d 843.

"In that case the Court considered an attack upon the constitutionality of the Act upon the ground that it violated Article I, Section 8, and Article XI, Section 8 of the Constitution of Tennessee, because it discriminated against retail dealers and in favor of wholesale dealers. The complainant in that case was a corporation which operated numerous chain stores and sold tobacco products 'at retail as well as at wholesale.' The Court commented at page 356 (of 178 Tenn., at page 843 of 157 S.W.2d), 'being a retail store, it does not come within the provision of the above quoted statute.' In sustaining the constitutionality of the Act in that case, and in finding the classification reasonable, the Court said at page 357 (of 178 Tenn., at page 844 of 157 S.W.2d):

188

" 'Applying these principles of constitutional law to the facts of the cause under consideration, several reasons occur to us as to the object which the Legislature had in mind in the enactment of this statute. Prior to the enactment of this statute other plans had been tried out by the Legislature, which evidently had proven unsatisfactory. Apparently this latter plan could be executed more economically and more efficiently than the preceding one. In the next place, a wholesaler, as a rule, purchases in much larger quantities than a retailer, and that in and of itself is a well-established principle in our commercial life that entitled him to a discount. Finally, it appears from our taxing statutes that the Legislature in this State has uniformly placed retail and wholesale merchants in different classes.'

"The complainant's contention, that the word 'only' should be elided from the statutory provision defining a wholesale dealer and jobber, is upon the ground that unless it is eliminated the Act will be obnoxious to the Constitution and that its elimination will not subvert or destroy the legislative intent in enacting the statute. It contends that the taxing statute in question must be read in *pari materia* with the Unfair Cigarette Sales Act, Section 69-401, et seq., T.C.A. That Act passed to prevent unfair competition in the sale of cigarettes, both at wholesale and at retail, and it includes a definition of 'wholesaler' as 'any chain of stores retailing cigarettes to the consumer, provided at least seventy-five per cent (75%) of its purchases are made direct from the manufacturer; * * *'. The complainant, in these contentions, is met with two difficulties.

"The first is that it is not necessary to elide the

word in question in order to adopt a construction which will save the constitutionality of the Act. The classification in the statute which was found reasonable and upon which the constitutionality of the Act was sustained in *Great Atlantic & Pacific Tea Co. v. McCanless, supra,* is the same classification which would apply to complainant and exclude it as a wholesaler, if the word 'only' is not elided. The Court can find no distinction between the two cases on the constitutional question. In *Great Atlantic & Pacific Tea Co. v. McCanless, supra,* the complainant was a chain store operator selling at both wholesale and retail and failed to qualify as a wholesaler within the meaning of that term as defined in the Act. It contended that the Act was discriminatory against it as a retailer and in favor of wholesalers. The Court held to the contrary. In this cause, if complainant is not a wholesaler under the Act, (and it cannot be if the word 'only' in the statutory provision is given its ordinary meaning and effect) then it is a retailer. Therefore, the reason for eliding the word 'only' in that statutory provision does not exist, as contended by complainant. Nor does the difference in definition of wholesaler in the tobacco tax statute and the Unfair Cigarette Sales Act, if the same be construed in *pari materia,* create an ambiguity or do violence to the doctrine that statutes upon the same subject will be construed so as to make a scheme adopted by the Legislature consistent and uniform in its operation. It can hardly be said that the lawmakers had in mind a scheme or plan for classifying tobacco sellers which was to prevail throughout the two Acts in question. One is a taxing statute, the other a regulatory measure. One derives revenue for the State, the other purportedly protects tobacco dealers from unfair ciga-

rette competition. It is true that the latter Act includes a definition of wholesaler as any person who is permitted to sell cigarettes at wholesale under the Tobacco Tax Law and makes specific reference to the taxing statute. By this reference it was the obvious purpose of the Legislature to include in the definition of wholesaler in the Unfair Cigarette Sales Law all persons who classified as wholesalers under the Tobacco Tax Law. The Court can find nothing in the two statutes, however, to indicate that the Legislature intended the converse to apply, and the Court is of the opinion that the definition of wholesaler in the Unfair Cigarette Sales Law may not be used to enlarge the definition of that term in the Tobacco Tax Law. Had the Tobacco Tax Law made reference to the definition of wholesaler in the Unfair Cigarette Sales Law, the situation presented would be entirely different. The only purpose in construing statutes in *pari materia* is to find the legislative intent which must always prevail, and the Court is of the opinion that the Legislature intended in the Tobacco Tax Law to classify as wholesalers only those persons who engaged exclusively in wholesale transactions; whereas, in the Unfair Cigarette Sales Law it intended to include all wholesalers under the taxing statute and in addition other persons such as retail chain stores, etc., as defined therein.

■ "The next difficulty with which complainant is confronted is that, in this Court's opinion, the Legislative intent and purpose in enacting the statute in question cannot be preserved if the word 'only' is elided therefrom. The Doctrine of Elision is applied where, and only where, in a statute containing an unconstitutional provision there is a reasonable presumption that the

Legislature would have passed the Act without the invalid provision. On this question our Supreme Court had said in *City of Nashville v. Browning,* 192 Tenn. 597, at page 605 (241 S.W.2d 583, at page 586):

" 'In determining whether part of an act can stand where another part has been held unconstitutional, a different rule as to presumption is recognized from that which obtains where the whole act is being considered. The general rule that legislative acts are primarily presumed to be constitutional, and that all intendments are to be made in favor of the act to give it effect according to the intent of the lawmaking power, does not apply in such cases, as the upholding of part of an act is not favored; and where a part has been held unconstitutional, and the remaining portion comes up for consideration as to whether it can stand as an independent proposition, the presumptions are generally against it, and it will not be sustained unless that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent wholly independent of that which was rejected.' Lewis' Sutherland Statutory Construction, Vol. 1, p. 583; *Malone v. Williams,* 118 Tenn. 390, 465, 103 S.W. 798.

" 'The Doctrine of Elision is applied with hesitation, *Mensi v. Walker,* 160 Tenn. 468, 26 S.W.2d 132.

" 'Not only is there no presumption that the Legislature would have passed the statute as elided, but there is the contrary presumption that the Legislature would not have passed the statute as elided, *Life & Casualty Ins. Co. of Tenn. v. McCormack,* 174 Tenn. 327, 334, 125 S.W.2d 151.

" 'The rule that the Court can only apply the Doctrine of Elision where there is a reasonable presumption that the Legislature would have passed the Act without the invalid provision, is laid down in a number of other Tennessee cases: *Williams v. State,* 155 Tenn. 364, 292 (293) S.W. 757; *Heymann v. Hamilton Nat. Bank,* 151 Tenn. 21, 266 S.W. 1043; *Edwards v. Davis,* 146 Tenn. 615, 244 S.W. 359; *Richardson v. Young,* 122 Tenn. 471, 125 S.W. 644 (664); *Reelfoot Lake Levee Dist. v. Dawson,* 97 Tenn. 151, 179, 36 S.W. 1041, 34 L.R.A. 725; *Franklin County v. Nashville, C. & St. L. Railroad,* 80 Tenn. 521, 531; *Neely v. State,* 63 Tenn. 174, 175; *Bouldin & Sanders v. Lockhart, Chr., etc.,* 62 Tenn. 262, 280.'

"It cannot be reasonably presumed that the Legislature would have passed the Act in question here without the word 'only' included therein. If it had done so it would have destroyed its entire scheme of limiting the compensation to wholesalers only for affixing tax stamps. With the word 'only' elided, any person, firm, or corporation who sells taxed articles at wholesale, regardless of any other type sales they might make would be entitled to the privileges limited to wholesalers under the Act as written. If the word 'only' be properly elided, then the complainant in *Great Atlantic & Pacific Tea Co. v. McCanless, supra,* would be entitled to a wholesaler's permit or license as would all persons who happen to conduct wholesale transactions as a part of their business. This Court is not authorized in construing a statute to adopt a construction which will fit the exigencies of one litigant's situation. The proper construction of a statute must be arrived at from a consideration of the

Act itself and not from its application to a particular set of facts; and if a portion of the statute must be elided in one case, it must likewise be elided in all cases alike. The legislative intent properly arrived at must meet the test of universal application. With this in mind, the Court cannot say that the Legislature would have passed the statute without the word 'only' therein, and thereby conferred the privileges of compensation for affixing tax stamps to all who, as a part of their business, conducted wholesale transactions.

■ "This Court is of the opinion, therefore, and will declare by decree that complainant is not a 'wholesaler dealer and jobber' within the meaning of Section 67-3101 (f) T.C.A.; that it is not entitled to the compensation allowed wholesale dealers and jobbers for selling and affixing stamps to tobacco products as provided in Section 67-3106, T.C.A.; and that the Act in question is not violative of Article I, Section 8, and Article XI, Section 8, Constitution of Tennessee, or the Fourteenth Amendment of the Constitution of the United States.

"Decree accordingly."

We have read with interest the excellent briefs herein, the authorities there cited and have made an independent search and investigation of the authorities. In addition to what is said above by the Chancellor we think the following, pertinent and conclusive of the question here.

■ It is to be remembered that for a statute to be discriminatory in the sense here spoken of it must discriminate between persons in a like situation, i.e., when persons engaged in the same business are subject to different restrictions or given different privileges under like conditions.

This statute gives this rebate here sought (if it can be thus called) to those doing business *"wholesale only"*. No one is singled out. All are treated alike if theirs is "wholesale only".

■ "Law of the land", correctly defined means a law "which embraces all persons who are or may come into like situation and circumstances". *Stratton Claimants v. Morris Claimants,* 89 Tenn. 497, 521, 15 S.W. 87, 91, 12 L.R.A. 70. It may be made to extend to all citizens, or be confined, under proper limitations to particular classes. If the class be a proper one, it matters not how few the persons are who may be included in it. Under the constitutional provisions here invoked the classification must be based on reason, be natural and not arbitrary. It cannot be said that the classification here is arbitrary or unreasonable generally.

Definitions of the word "wholesale" will be found in 77 C.J.S. Sales sec. 1, page 582. Any definition of the word when coupled with the word "only" means that the sales are restricted to "wholesale". The word "only" is defined as,

"A word of restriction or exclusion, of restriction as to that which it qualifies and of exclusion as to other things." 46 C.J., p. 1105, 67 C.J.S., p. 498.

All assignments of error are overruled and the decree is affirmed.