404 P.2d 308

**Edward K. SALOME, Plaintiff-Appellee and Cross-Appellant,**

**v.**

**EIDAL MANUFACTURING COMPANY and Mountain States Mutual Casualty Company, Defendants-Appellants and Cross-Appellees.**

**No. 7651.**

Supreme Court of New Mexico.

July 19, 1965.

Rehearing Denied Aug. 23, 1965.

Carmody, C. J., and Noble, J., dissented.

Keleher & McLeod, John B. Tittmann, Albuquerque, for appellants and cross-appellees.

Edward L. Yudin, Albuquerque, for appellee and cross-appellant.

COMPTON, Justice.

The defendants appeal from a judgment awarding workmen's compensation benefits for partial permanent disability of the body as a whole, allegedly resulting from an injury to a scheduled member, in this instance, the plaintiff's right foot.

The pertinent findings read:

"1. Plaintiff suffered an accidental injury arising out of and in the course of his employment on November 21, 1962 when a trailer hitch fell on his right foot."

"4. That from the time of his injury through the date of trial, Plaintiff received weekly medical treatments and has not yet been discharged by his physician."

"9. Plaintiff has suffered partial permanent disability to his body as a whole in the amount of 35%, from the accidental injury."

The appellants do not question findings 1 and 4, but do complain of finding number 9. It is their contention that any award should have been limited to an injury to a scheduled member, the "right great toe with the metatarsal bone thereof" as provided by § 59–10–18.4(33), 1953 Comp.

It is well established that the scheduled injury section is exclusive unless

there is evidence of separate and distinct impairment to other parts of the body in addition to the disability resulting from the injury to a scheduled member. Boggs v. D & L Construction Company, 71 N.M. 502, 379 P.2d 788. But the converse of the rule is noted. When the effects of an injury to a scheduled member extend to and impair other parts of the body, compensation is not limited to that provided by statute for loss of the scheduled member or the loss of use thereof. Gonzales v. Gackle Drilling Company, 70 N.M. 131, 371 P.2d 605. Also see 2 Larson's Workmen's Compensation Law, § 58.20, and we quote in part therefrom:

"The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive. A common example of this kind of decision is that in which an amputation of a leg causes pain shooting into the rest of the body, general debility, stiffening of the hip socket, or other extended effects resulting in greater interference with ability to work than would be expected from a simple and uncomplicated loss of the leg."

Consequently, we review the record to determine whether there is evidence of a substantial nature of bodily impairment and disability beyond that due to the loss, or loss of use of the scheduled member. In our review this court must construe the findings of the court liberally so as to support the judgment. Plains White Truck Company v. Steele, 75 N.M. 1, 399 P.2d 642.

Appellee was of the age of 59 years when he sustained the injury and had worked for the appellant, Eidal Manufacturing Company, for some 17 years, part time as a foreman and later as an assembler. The latter work required the lifting of heavy objects, in some instances as much as 200 pounds. On November 21, 1962, a jack supporting a trailer weighing some 4 or 5 tons slipped, causing the trailer hitch to fall onto appellee's right foot, about the middle. The right foot was badly broken. He was taken first to Dr. Minear who X-rayed the foot, found it broken and placed it in a cast. Later the foot was treated by Dr. Haas for a considerable period of time. In January, 1963, he returned to work but the employer had him to do only light work, and in March, 1963, his employment was terminated. Thereafter, he was never able to do heavy work due to continuous pain in his foot, legs, right side and in his back. When he walks, due to pain, he tilts the weight of his body off the first metatarsus, causing the foot to turn inward, which is not normal. At times he has to walk on his heel or heel and toes and has developed a definite limp. Since March, 1963, he has assisted his wife and children in operating a small store at 112 Girard, N. E. in Albu-

querque, but is able to do only light work. Also he is unable to drive an automobile for any length of time because of leg and back pains.

Dr. Sidney Schultz, a physician and orthopedic surgeon, treated appellee previously in 1957 for a like injury to his left foot. He saw him later in June, 1963. At that time he examined, took X-rays of appellee's right foot, and obtained a history of the case. In answers to the following questions propounded with respect to appellee's latter injury and disability, the doctor stated:

"Q. Now, doctor, has this injury affected plaintiff's ability to walk?

A. Yes.

Q. In what manner has this injury affected plaintiff's body?

A. In the sense that his abnormal weight bearing, that is his bearing weight on the outer side of his foot, by altering his gait and shifting his mechanics could cause him some back pain and the patient does complain of pain going up to his back.

Q. What is the condition of his foot at the present time?

A. The condition of the foot is such that I believe this man has pain in the foot on prolonged standing, that he would have pain on walking on uneven ground and even prolonged walking on even surface because he doesn't bear his weight normally on the foot but tilts the weight off the first metatarsus.

Q. You stated, doctor; there was a shortening in the metatarsus?

A. This shortening is present on both sides. This is normal for him but with this fracture and angulation it has shortened a short bit more.

Q. Does this have any effect on the ability to walk?

A. I think the deformity of the bone itself, plus the fact he has a fracture line entering the joint causes pain. Therefore, he is protecting it. He is balancing his weight on the outside.

Q. This causes the foot to roll inward?

A. No, it causes the foot to turn inward, what we call inversion, so that he picks the inner side of his foot off the and rolls the outer side toward the floor, so that he is bearing most of his weight toward the small side of the foot. This is not normal. We bear most of our weight on the big toe side of the foot at the head of the first metatarsus.

Q. When Mr. Salome was on the stand this morning, he testified he had pain in the left knee, can you account for this?

A. Just on the basis of abnormal stress and strain on his knee, perhaps

all that and even up to his back, if he walks prolonged periods, with this foot held in that position.

Q. . Is a foot appliance needed for this man at this time?

A. I think so. I think something should be done, some type of support made to attempt to more evenly distribute his weight so that he can try to get off the outside of his foot.

\* \* \* \* \* \*

Q. How would you rate his functional disability at the present time?

A. It depends on the occupation. I think for a sedentary occupation, the man would have very little disability. I think he would have a great deal of disability going into the 75% category for heavy work, say for work over uneven ground, for work that would involve a lot of heavy lifting.

\* \* \* \* \* \*

Q. Doctor, do your clinical findings support his complaints?

A. "Yes."

Jerry Jordan, an investigator for the appellants, was called as a witness by them. He testified that he took motion pictures of appellee while attending the store. This was for the purpose of rebutting appellee's testimony that he walked with a limp. The pictures were admitted into evidence and according to the views of the witness Jordan no limp was shown to exist. Dr. Schultz previously had stated on cross-examination that if he could see the pictures it possibly could alter his testimony as to appellee's injury and bodily disability. Thereupon the court suggested to counsel that Dr. Schultz should be given an opportunity to view the pictures and report to the court by letter. That the parties agreed to the court's suggestion is reasonably inferable from the fact that no objection was made to the suggested procedure and from the further facts that both parties rely in part upon Dr. Schultz' report. The report reads:

"DRS. SCHULTZ & HURLEY
Orthopedic Surgery
Encino Medical Plaza, Suite 14
717 Encino Place, NE
Albuquerque, New Mexico

SIDNEY SCHULTZ, M. D.

LLOYD A. HURLEY, M. D.;
August 8, 1963

Judge John B. McManus, Jr.
City Court House
Albuquerque, New Mexico
RE: Edward K. Salome

Dear Judge McManus:

The motion pictures on the above named patient were shown in my office on August 5, 1963. The films showed the patient sweeping, walking, and squatting down. No other significant activities were noted although the pa-

tient did use his right foot on one occasion to flatten something on the ground. At no time did the patient appear to limp. During his sweeping activities he raised his right foot from the ground on repeated occasions but it is impossible to state whether or not this was just a normal action in the course of his sweeping or whether he was actually favoring the right foot. It is regrettable that no other activities were displayed and I feel that it is impossible to accurately determine the actual degree of the patient's physical ability from the scenes shown.

There is no question in my mind that this man can perform light work without significant difficulty which he did in the motion pictures. I still feel that he would have trouble performing heavy work for any prolonged period of time. The motion pictures do not alter my opinion in this regard.

From the standpoint of disability we have a knotty problem. For the type of work which the patient was seen to perform in the motion pictures I do not feel that he would have more than a ten per cent permanent partial disability of the body as a whole. For work involving excessive bending and heavy lifting this disability might go as high as seventy five per cent, of the body as a whole. These figures are related to the body as a whole despite the fact

that I am aware that his injury was confined to the right foot. However, if the patient really does have any [any] appreciable limp for any prolonged period of time there is no question that he would have some symptoms referable to his low back despite the fact that no injury to this particular area was sustained. My recommendations for treatment remain unchanged.

I hope this is the information which you desire. Should there be any other questions, I would be more than glad to discuss the situation with you.

Sincerely yours,
S/ Sidney Schultz, M. D.
Sidney Schultz, M. D."

■ We conclude from the testimony that the court was warranted in finding that as a medical probability the appellee had a general bodily impairment and disability fairly traceable to the injury to his right foot. Compare Reck v. Robert E. McKee General Contractors, 59 N.M. 492, 287 P.2d 61; Hamilton v. Doty, 65 N.M. 270, 335 P. 2d 1067; Lipe v. Bradbury, 49 N.M. 4, 154 P.2d 1000.

Appellants rely strongly on our recent cases, Boggs v. D & L Construction Company, supra, and Sisneros v. Breese Industries, Inc., 73 N.M. 101, 385 P.2d 960, as support for their position that compensation should be limited to the scheduled member. The cases have been carefully considered

and they are distinguishable on the facts; no general bodily disability was shown to exist in either of these cases. It follows the judgment should be affirmed. Appellee will be allowed $750.00 for the services of his attorney in representing him in this court.

It is so ordered.

CHAVEZ, J., concurs.

MOISE, J., concurring specially.

CARMODY, C. J., and NOBLE, J., dissenting.

MOISE, Justice (concurring specially).

I agree that the case should be affirmed, and that attorneys fees should be allowed. However, I find it difficult to distinguish this case on the facts from Boggs v. D & L Construction Company, 71 N.M. 502, 379 P.2d 788, and from Sisneros v. Breese Industries, 73 N.M. 101, 385 P.2d 960.

In Boggs the claimant had injured his knee which resulted in pain in other parts of his body, difficulty in sleeping, trouble in walking, occasional falling, and an entire loss of his wage earning ability. This court limited the recovery to a percentage of the amount provided in the schedule (§ 59–10–18.4, N.M.S.A.1953). The opinion pointed out that the only injury was to claimant's knee "and any disability to his body, as a whole, was a direct result of this injury."

It seems to me that the court in Boggs, supra, reasoned that since § 59–10–18.4, supra, provided that the trial court could grant enlarged compensation beyond the schedule in certain cases where there had been actual amputation, it would necessarily follow that since the statute made no such provisions for injuries not requiring amputation, the legislature intended that recovery be limited to scheduled amounts absent amputation.

Professor Larson in 2 Workmen's Compensation, § 58.20, points out that most cases limit recovery to the schedule amount in a case where there is a loss of a limb, without complications, even though the workman is thereby totally disabled to do any work for which he is qualified. It seems to me that the provision in § 59–10–18.4, supra, discussed above, must have been included to avoid such a result. Does it follow, therefore, that the legislature intended that awards be limited to scheduled amounts where, instead of actual amputation there was an injury to a scheduled member which resulted in disability to the body as a whole and a greater loss of earning capacity than recognized by the schedule? I do not think so. In this connection, I quote the following from 2 Larson, Workmen's Compensation Law, § 58.20:

"The great majority of modern decisions agree that, if the effects of the

loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive. A common example of this kind of decision is that in which an amputation of a leg causes pain shooting into the rest of the body, general debility, stiffening of the hip socket, or other extended effects resulting in greater interference with ability to work than would be expected from a simple and uncomplicated loss of the leg.

\*     \*     \*     \*     \*     \*

"The usual statute provides for both total disability and specific loss of a leg, without expressly saying that either shall be exclusive. It could therefore be argued that, since the act must be given a liberal construction, destruction of the more favorable remedy should not be read into the act by implication in a case where claimant is able to prove a case coming under either heading. Loss of a leg may or may not cause total disability as defined in the preceding section. To refuse total disability benefits in such a case, when total disability is otherwise established to the satisfaction of the usual tests, has the effect of ruling out the inability-to-get-work element in a listed group of injuries which just happen to take the form of a neatly classifiable loss of a member. It has already been

shown that the inability-to-get-work factor is an indispensable ingredient in the concept of total disability. If this is so, it is difficult to see why this factor is relevant in case of loss of a lung but not in case of loss of a leg. Logically, there is no reason to make the distinction turn on physical extension of the effects beyond the lost member. If, in addition to loss of a hand, there are incidental injuries and pains elsewhere, there is no greater reason why this should entitle claimant to make a showing of *de facto* total disability based on refusal of employment and to take advantage of the 'odd-lot' doctrine than if the loss was an uncomplicated amputation of a leg. \*  \*  \*

"Somewhat the same problem on a smaller scale arises when a claim is made that loss of all or parts of several fingers amounts to loss of use of the hand. Of course, as has been observed, the finger schedule would not be exclusive if pain or other effects extended beyond the finger. The present question is whether, in the absence of such physical extension of effects, a claimant can be allowed to assert that the cumulative or special result of the individual losses is a loss of use of the hand, or a percentage loss of it. Consistency with the argument just applied to total disability would require that the larger award be permitted. Just

as parallel benefits for loss of a leg and total disability are provided, so parallel benefits for loss of specific fingers and loss of the hand stand side by side in the statute. If, under the schedule, loss of use is equivalent to loss, the claimant who can in fact show loss of use of his hand should not under liberal statutory construction be deprived of a benefit provided for that loss merely because there also exists a less favorable remedy. Moreover, just as total disability should be judged in part in terms of the claimant's particular qualifications and training, so the question whether loss of several fingers amounts to loss of use of the hand should depend in part on whether the hand has become useless to the claimant for any work for which he is qualified by experience and background. * . * * "

Whereas, prior to amendment of § 59–10–18(b) by Ch. 67, § 22. N.M.S.L.1959 (§ 59–10–18.4, supra) the schedule was only applicable upon "loss" of a scheduled member, the section now applies not only in the event of "loss" but also for "loss of use." In this variance, however, I perceive of no reason for a different rule or contrary approach. Rather, it seems to me that the rule as outlined in the quotation above is reasonable and furthers the expressed intent of the legislature.

In Sisneros, supra, a case where the claimant lost parts of four fingers and suffered a two-inch cut in his hand, the court merely followed Boggs and limited him to the compensation provided in the schedule notwithstanding pain in the hand, arm and neck, and loss of strength in the arm. The court expressed the view that the pain in the other parts of the body was incidental to the injury suffered and could not be made the basis of a separate or different claim for compensation. That this was correct under the rule announced in Boggs, supra, cannot be doubted.

It seems to me, however, the proper approach is that announced by Larson in § 58.20, quoted above, and that we should apply it here. Gonzales v. Gackle Drilling Co., 70 N.M. 131, 371 P.2d 605, is a case decided under our statute as it existed prior to its amendment in 1959, and is an example of a situation where we recognized the right of a claimant to total permanent disability even though the only injury was the loss of a scheduled member. Subsequent changes do not require a different result.

In the instant case, I would affirm the trial court and if in so doing, Boggs, supra, and Sisneros, supra, must be overruled, I would do that. Since the other members of the court do not agree with this approach, and the result reached in Justice Compton's opinion is correct in my

view, I specially concur in the affirmance and granting of attorneys fees therein ordered.

CARMODY, Chief Justice, and NOBLE, Justice (dissenting).

This case cannot be distinguished from either Boggs v. D & L Construction Company, 1963, 71 N.M. 502, 379 P.2d 788, or Sisneros v. Breese Industries, Inc., 1963, 73 N.M. 101, 385 P.2d 960, and, on their authority, should be reversed. Therefore, for the reasons stated in these cases, we dissent.