423 P,2d 431

Charles A. COOPER, John H. McDowell, Thomas Hall, Clair Miller, L. E. Meyer, Otis Campbell, Trustees of the New Mexico Pipe Trades Welfare Trust Fund, Plaintiffs-Appellees,

v.

BANK OF NEW MEXICO, a state banking corporation, Defendant-Appellant.

No. 7887.

Supreme Court of New Mexico.

Nov. 21, 1966.

Rehearing Denied Feb. 13, 1967.

**400**

———◆———

Tonkin, Cotter & Hendley, Albuquerque, for appellant.

Knight & Sullivan, Albuquerque, for appellees.

OPINION

CHAVEZ, Justice.

This case arose from the same factual situation which gave rise to the case of Cooper v. Albuquerque National Bank, 75 N.M. 295, 404 P.2d 125.

Plaintiffs-appellees, as trustees of the New Mexico Pipe Trades Welfare Trust Fund, sued defendant-appellant Bank of New Mexico, alleging that from October 14, 1953, to March 15, 1958, checks drawn payable to appellees in the amount of $14,341.76 were paid by appellant bank upon forged, unauthorized, unlawful, fraudulent or irregular endorsements; that appellees had no knowledge thereof until August 29, 1958, but that appellant knew or should have known thereof prior to said date.

The question here presented is whether the trust fund administrator John A. Peke had the authority to endorse checks made payable to the New Mexico Pipe Trades Welfare Trust Fund, and/or whether he could only deposit checks so made to said trust fund into its account in the Albuquerque National Bank. Appellees contend that endorsements by the administrator to an account with appellant bank were unlawful and unauthorized. Appellant bank argues that the administrator had the authority to endorse the checks for deposit and collection to an account with appellant.

The trial court made the following findings of fact:

"1. That the Plaintiffs are \* \* \* Trustees of the New Mexico Pipe Trades Welfare Trust Fund; \* \* \*.

"2. That the following written contracts were entered into between the Plaintiffs, Trustees of the New Mexico Pipe Trades Welfare Trust Fund, and the Albuquerque National Bank: Signature Card dated November 30, 1953, containing the following:

'RESOLVED, that \* \* \* *Two Signatures Required,* President ———, Vice-President, or *Harold Trover,* Secretary, *John Peke, Administrator* of this corporation may, and they are hereby authorized to sign checks and drafts for and on behalf of this corporation, and that each of them be and is hereby authorized to endorse for and on behalf of this corporation, checks and other instruments for deposit, encashment or otherwise; and that the Albuquerque National Bank, Albuquerque, New Mexico, be, and it is hereby authorized to pay on account of this corporation any and all checks and other instruments signed and/or endorsed in accordance herewith.'

Signature card dated January 30, 1956, containing the following:

'RESOLVED, that either ———, President, or ———, Vice-President, or *Thomas W. Hall, Secretary-Treasurer,* Secretary, *John Peke, Administrator* of this corporation may, and they are hereby authorized to sign checks and drafts for and on behalf of this corporation, and that each of them be, and is hereby authorized to endorse for and on behalf of this corporation, checks and other instruments for deposit, encashment or otherwise; and that the Albuquerque National Bank, Albuquerque, New Mexico, be and it is hereby authorized to pay on account of the corporation, any and all checks and other instruments signed and/or endorsed in accordance herewith.'

This Resolution was amended by the following notation under Special Instructions:

'2 (two) Signatures required.'

"3. That the actual authority of John A. Peke was expressed as per the written instructions of the Plaintiffs to the Albuquerque National Bank in that two (2) signatures were required for encashment of any checks or the endorsement thereof.

"4. That there was no authority for the deposit of any check by John Peke, or any other person, to any other account except the account of the New Mexico Pipe Trades Welfare

Trust Fund where checks were payable to the said New Mexico Pipe Trades Welfare Trust Fund all with the Albuquerque National Bank, Albuquerque, New Mexico.

"5. That no contractual relationship of any kind or nature existed between Plaintiffs and Defendant, and that the Plaintiffs had no account with the Defendant. From the 14th day of October, 1953, and up to and including the 15th day of March, 1958, various persons and firms, for valuable consideration, drew checks in favor of New Mexico Pipe Trades Welfare Trust Fund, or some appropriate title or abbreviation thereof, as payments to the Trust for employees covered under a Welfare Trust Plan.

"6. That said checks were endorsed by a rubber stamp in the following manner:

'NEW MEXICO PIPE TRADES
WELFARE TRUST FUND
118 Cedar N. E.
Albuquerque, New Mex.',

and immediately thereafter said checks were deposited with a rubber stamp for deposit with the Defendant to the credit of Fixture Stamp Plan Account and deposited to the Fixture Stamp Plan Account with the Defendant Bank.

"7. That the Defendant accepted the aforementioned checks and collected same from drawee banks in the total amount of $14,341.76, although said checks were not payable to the said Fixture Stamp Plan Account and not properly endorsed by New Mexico Pipe Trades Welfare Trust Fund.

"8. That the endorsements thereon were forged, unauthorized, unlawful, fraudulent, and irregular.

"9. That Plaintiffs in due time made demand upon the Defendant for the said amount of $14,341.76, but the Defendant refused to pay the same or any part thereof.

"10. That the Defendant has not accounted unto the Plaintiffs for funds of the Plaintiffs wrongfully received by the Defendant and converted to the use and benefit of another.

"11. That the Defendant has had and received money of the Plaintiffs, but no part thereof, has been paid unto the Plaintiffs.

"    *  *  *

"13. That the Plaintiffs did not discover conversion of its funds until after March 13, 1958, and the failure to discover prior to that time was not due to any lack of ordinary care or diligence on the part of the Plaintiffs.

"14. That the Plaintiffs, Trustees, were not the Trustees of the Associated Plumbing, Heating and Piping Contractors of Albuquerque, and had no connection whatsoever with its Fixture Stamp Plan Account with the Defendant Bank.

"15. That the rubber stamp endorsements on the checks herein were not authorized.

"16. That John A. Peke was administrator of the New Mexico Pipe Trades Welfare Trust Fund and was an employee of the Associated Plumbing, Heating & Piping Contractors of New Mexico.

"17. That the said John A. Peke was the person who endorsed the checks in the manner aforesaid for deposit with the Defendant and that he lacked authority to so deposit.

"18. That the authority of the said John A. Peke was limited to deposit of checks payable to the account of the said New Mexico Pipe Trades Welfare Trust Fund with the Albuquerque National Bank and no other bank, and he was not authorized to present said checks for payment.

"   *   *   *."

Under point I, appellant argues that the trust fund administrator had actual authority to endorse checks for deposit and collection with appellant bank. This argument is based primarily upon appellant's interpretation of the language contained in the two signature cards of the Albuquerque National Bank, the first completed on November 30, 1953, and the second on January 30, 1956. Appellant contends that these cards show the authority of the administrator to endorse the checks to appellant bank. Appellant also argues that testimony of one of appellee's witnesses proved the authority of the administrator to endorse the checks by rubber stamp endorsement to appellant bank.

Under point II, appellant argues that if there was no actual authority there was apparent authority. This argument is mainly supported by the citation of cases and other authorities defining the term "apparent authority."

Appellant has not complied with Supreme Court Rule 15(6) (§ 21–2–1(15) (6), N.M.S.A., 1953 Comp.), which provides:

"6. Assertion of fact must be accompanied by references to the transcript showing a finding or proof of it. Otherwise the court may disregard the fact.

"A contention that a verdict, judgment or finding of fact is not supported by substantial evidence will not ordinarily be entertained, unless the party so contending shall have stated in his brief the substance of all evidence bearing upon the proposition, with proper references to the tran-

script. Such a statement will be taken as complete unless the opposite party shall call attention in like manner to other evidence bearing upon the proposition."

Neither has appellant attacked any of the findings of fact made by the trial court and thus said findings must be accepted by us and are the facts upon which the case rests in this court. Covington v. Rutledge Drilling Company, 71 N.M. 120, 376 P.2d 180; J. A. Silversmith, Inc. v. Marchiondo, 75 N.M. 290, 404 P.2d 122; Michael v. Bauman, 76 N.M. 225, 413 P.2d 888.

Nor can appellant find any support from Alvarez v. Alvarez, 72 N.M. 336, 383 P.2d 581, where we decided that it was not necessary to copy the objectionable finding or findings. Alvarez is distinguishable because appellant, in that case, set out in his brief, with proper references to the transcript, a considerable amount of testimony clearly indicating an attack on a certain finding made by the trial court.

A general attack is not sufficient. Hugh K. Gale, Post No. 2182 Veterans of Foreign Wars v. Norris, 53 N.M. 58, 201 P.2d 777. The substance of all evidence bearing on the proposition must be included, with proper reference to the transcript. Hugh K. Gale, Post No. 2182 Veterans of Foreign Wars v. Norris, supra.

In the case before us, none of the trial court's findings are attacked, either by argument or point, as not being supported by substantial evidence. We can only determine if the conclusions of law find support in the findings of fact. Jontz v. Alderete, 64 N.M. 163, 326 P.2d 95; Marrujo v. Martinez, 65 N.M. 166, 334 P.2d 548. As the findings of fact stand, and such findings being supported by substantial evidence, the conclusions of law follow. There is then no issue for our consideration.

The judgment is affirmed.

It is so ordered.

NOBLE, J., and OMAN, J., Court of Appeals, concur.

ON MOTION FOR REHEARING

OPINION

PER CURIAM.

The point of appellant's argument was not made clear to us originally. On rehearing, appellant bank asserts that the point of its argument was that, upon the facts found by the trial court, § 33-1-4, N.M.S.A., 1953 Comp., relieves the bank of liability. The pertinent portion of the statute reads:

"If any negotiable instrument payable * * * to his principal is endorsed by a fiduciary *empowered to endorse such instrument on behalf of his principal,* the endorsee [*bank*] *is not bound to inquire whether the fiduciary is commit-*

*ting a breach of his obligation * * * and is not chargeable with notice that the fiduciary is committing a breach of his obligation * * *."* (Emphasis added.)

The bank relies exclusively upon the italicized language above, as affording it protection in accepting the checks for deposit. It points to the trial court's finding that Peke, along with another officer, were authorized to endorse the checks, and asserts that a proper construction of the statutory language "empowered to endorse such instrument on behalf of his principal" means that, if the fiduciary has any authority to endorse in any manner, the endorsee (bank) is relieved of any obligation to inquire whether the endorsee is exceeding his authority. We find the argument to be without merit.

█ The words "empowered" and "endorse" must be construed with reference to the intention or purpose of the legislation to be derived from the whole statute. Allen v. McClellan, 75 N.M. 400, 405 P.2d 405; C. de Baca v. Baca, 73 N.M. 387, 388 P.2d 3,2; Montoya v. McManus, 68 N.M. 381,

362 P.2d 771; In re Vigil's Estate, 38 N.M. 383, 34 P.2d 667, 93 A.L.R. 1506.

█ "Endorse," as used in the statute, means to transfer a negotiable instrument by signing one's name on the back thereof. See Webster's Third International Dictionary, p. 749. The word "empowered" means authorized. 14A Words and Phrases, p. 137.

█ The obvious intent of the legislature in enacting § 33–1–4, supra, was to relieve the endorsee of the obligation to inquire respecting a breach of duty by a fiduciary endorser, where such fiduciary had authority to transfer the instrument by his endorsement or signature. The trial court, however, expressly found that Peke was not authorized or empowered to transfer these checks by his endorsement alone. Accordingly, the statute did not operate to relieve the bank of its obligation to inquire whether he breached his duty to his principal.

The motion for rehearing is denied.

It is so ordered.