436 P.2d 507

**Dave W. WEBB, Plaintiff-Appellee,**

v.

**W. A. HAMILTON, Jr., d/b/a W. A. Hamilton, Jr., Construction Company, Employer, and Peerless Insurance Company, Insurer, Defendants-Appellants.**

**No. 8132.**

Supreme Court of New Mexico.

Jan. 22, 1968.

Rodey, Dickason, Sloan, Akin & Robb, James C. Ritchie, Robert M. St. John, Albuquerque, for defendants-appellants.

Toulouse, Ruud, Gallagher & Walters, Albuquerque, for plaintiff-appellee.

## OPINION

MOISE, Justice.

Plaintiff-appellee, while employed by appellant-employer received an injury to his right eye which arose out of and in the course of such employment. Previously, he had lost the sight in his left eye. In addition to finding these facts, the court also found as follows:

"3. That the injury to plaintiff's right eye resulted from a piece of metal becoming lodged in the right eye, and on that date, namely February 10, 1964, plaintiff did not suffer any other physical injury to any other part of his body or any emotional or mental injury affecting his body as a whole; and that it was not until sometime after the accident when the sight in plaintiff's right eye was materially affected and diminished, that the emotional instability and depression reaction followed because of the loss of the functional ability to get around; the worry about blindness; and the worry about financial obligations."

"7. That as set forth in Paragraph 3 hereof, in addition to the injury incurred to plaintiff's right eye, plaintiff, as a natural and direct result of the aforesaid accident, incurred an injury to his nervous, mental and/or emotional system, which said injuries have rendered the plaintiff totally and permanently disabled.

"8. That the aforesaid injury to plaintiff's nervous, emotional and/or mental system consists of, but is not limited to, a continual tremor in his right arm, a depressive reaction neurosis and a marked change in his personality from a normal, reasonably happy and well adjusted individual to a depressed, withdrawn, recluse type of individual."

"10. That the diminution of vision in his right eye caused by the accident in question varies from 20/40 to almost total blindness, depending on light conditions, plaintiff being almost totally blind in conditions of bright light, but having considerable vision in conditions of dim light."

Based on these findings, the court concluded, as follows:

"4. That defendants should assume and pay plaintiff the sum of $38.00 a week compensation commencing from

December 12, 1964, to date, and to continue such payments until further order of the Court, or until they have paid a total of 500 weekly payments."

█ Appellants do not question or attack any of the findings made by the court. They are accordingly the facts of the case binding on us. Cooper v. Bank of New Mexico, 77 N.M. 398, 423 P.2d 431 (1967); J. A. Silversmith, Inc. v. Marchiondo, 75 N.M. 290, 404 P.2d 122 (1965).

They address themselves to claimed error in conclusion No. 4, quoted above. It is appellants' position that § 59–10–18.4, N.M.S.A.1953, does not allow or permit an award on the basis of total and permanent disability and that the conclusion of the court granting benefits beyond 120 weeks is contrary to the statute. The pertinent language of § 59–10–18.4, supra (as it read at the time of the accident), relied on by appellants, is as follows:

"A. For disability resulting from an accidental injury to specific body members * * *, the workmen shall receive * * * a maximum compensation of thirty-eight dollars ($38.00) a week for the following periods:

\* \* \* \* \* \*

"(41) Total blindness of one eye .................... 120 weeks

\* \* \* \* \* \*

"D. The loss of * * * both eyes * * * constitutes total disability, permanent in character; provided, the employer shall not be liable for compensation for total disability if the loss of one * * * eye occurred before the accidental injury for which claim is made, but in that event compensation shall be paid only in accordance with the schedule set forth in Subparagraph A of this section."

It cannot be disputed that appellants' position is correct insofar as benefits to be awarded for injury to the right eye are concerned. However, in the instant case the metal which struck the right eye causing the injury thereto and disability therefrom also injured plaintiff's "nervous, mental and/or emotional system" and, as a result, plaintiff is totally disabled.

█ In our view of § 59–10–18.4, supra, the provisions limiting awards to fixed periods for certain specified injuries or losses was not intended to prevent a larger recovery where, as here, a part of the body, in addition to a particular member or organ, is affected as a result of the accident and injury to the scheduled member.

In 1963 the definition of disability, whether partial or total was changed (Ch. 269, Sec. 1, N.M.S.L.1963), now appearing as § 59–10–12.18 and 59–10–12.19, N.M.S.A. 1953 (Ch. 295, Secs. 18 and 19, N.M.S.L. 1965), and a functional approach to determining loss of earning capacity more or less comparable to the method applied prior to 1959 was again adopted. The reduction in earning capacity has always been the primary concern of workmen's compensation legislation, see Lozano v. Archer, 71 N.M. 175, 376 P.2d 963 (1962), and this fact remains true today. Only the method of measuring it has been changed. Thus when disability, as now measured, does not result exclusively from injuries to a scheduled member, section 59–10–18.4, supra, does not control.

While there have been other changes in the workmen's compensation act over the years, the essential relationship of § 59–10–18.4 to the other remedial sections of the act has remained unchanged. There are numerous cases, including Mathews v. New Mexico Light & Power Co., 46 N.M. 118, 122 P.2d 410 (1942); Lipe v. Bradbury, 49 N.M. 4, 154 P.2d 1000 (1945); Reck v. Robert E. McKee General Contractors, 59 N.M. 492, 287 P.2d 61 (1955); Boggs v. D & L Construction Co., 71 N.M. 502, 379 P.2d 788 (1963); Sisneros v. Breese Industries, Inc., 73 N.M. 101, 385 P.2d 960 (1963); Salome v. Eidal Manufacturing Co., 75 N.M. 354, 404 P.2d 308 (1965); Jensen v. United Perlite Corporation, 76 N.M. 384, 415 P.2d 356 (1966); Casados v. Montgomery Ward & Co., 78 N.M. 392, 432 P.2d 103 (1967), which have explained this relationship and have articulated the

principle that we again apply today. Any inconsistency which might appear to be present in any of our decisions can be explained by looking at the particular facts which gave rise to them. We would here assert that none of the cases announce a rule different from that here set forth, or do they require a result different from that which we have reached.

■ The language of § 59–10–18.4(D), supra, as we read it, simply means that where the loss of sight in one eye results in total disability because the sight had previously been lost in the other eye, the limitation provided in the schedule (120 weeks) for the loss of one eye shall apply. It does not say, nor do we think it was intended that it say, that when total disability results, not alone because of injury to the second eye but because of injury to or effects on the nervous system or some other part of the body, the limitation shall be applicable. See Larson, Workmen's Compensation, § 58.20.

■ We have long since recognized accidental injuries to the nervous system as compensable when resulting in disability. See Ross v. Sayers Well Servicing Co., 76 N.M. 321, 414 P.2d 679 (1966); Gonzales v. Gackle Drilling Company, 70 N.M. 131, 371 P.2d 605 (1962). Indeed, we find ourselves unable to distinguish the present case from Jensen v. United Perlite Corporation, supra. That case involved an injury to an arm. Although the arm healed, because of traumatic neurosis or hysteria, claimant was unable to work. We there said:

"In Boggs v. D & L Construction Company, supra, we held that the scheduled injury section of the Workmen's Compensation Act is not exclusive when there is proof of a separate and distinct impairment to other parts of the body. See also, Salome v. Eidal Manufacturing Company, 75 N.M. 354, 404 P.2d 308. In the instant case, expert testimony indicates that claimant suffered an injury to his mind, as a result of an accident, which has resulted in total and permanent disability according to the conclu-

sions of the trial court. This is a separate and distinct injury to a part of the body other than his left arm. It is not solely the fact that claimant is unable to use his left arm, which has prevented him from returning to some type of employment. It appears to be the loss of his self-respect which has caused much of his uselessness. It was entirely proper for the trial court to conclude that claimant was totally and permanently disabled, under the facts and testimony of this case."

To hold as argued by appellants would have the anomalous result of permitting recovery for injury beyond the scheduled amount, if only one eye is injured and a neurosis results, but would deny it if the injury is to a second eye and the same neurosis follows. We see nothing in § 59–10–18.4(D), quoted above, that would dictate this result simply because the injury was to an eye rather than to some other part of the body. See Larson, Workmen's Compensation, §§ 42.00, et seq., and 58.20.

From the foregoing, it follows that the judgment should be affirmed, together with an award of $750.00 attorney fees to plaintiff for representation on this appeal. It is so ordered.

CHAVEZ, C. J., and COMPTON and CARMODY, JJ., concur.

NOBLE, Justice (dissenting).

In my view the majority have today not only ignored the plain and express mandate of the legislature, but by judicial construction have effectively rendered meaningless and ineffective the scheduled-loss provision of the workmen's compensation law.

It is undisputed that Dave W. Webb, who had lost the sight of his left eye as the result of a prior accident while working for a different employer, lost the effective use of his right eye as the result of the accidental injury complained of which occurred February 10, 1964. Thus, this injury caused the effective loss of the use of a

second scheduled body member. Some months later, and solely because of the loss of functional ability to get around, worry about blindness and his inability to support his family, he developed a compensation .neurosis for which total permanent disability compensation was awarded.

We have previously had occasion to consider the effect of injuries to scheduled members on general bodily impairment. See Lipe v. Bradbury, 49 N.M. 4, 154 P.2d 1000 (1954); Reck v. Robert E. McKee General Contractors, 59 N.M. 492, 287 P.2d 61 (1959); Hamilton v. Doty, 65 N.M. 270,. 335 P.2d 1067 (1958); Lee v. U.S.F. & G. Co., 66 N.M. 351, 348 P.2d 271 (1960); Rhodes v. Cottle Constr. Co., 68 N.M. 18, 357 P.2d 672 (1960); Hamilton v. Doty, 71 N.M. 422, 379 P.2d 69 (1962). Each of those cases involved injuries occurring prior to enactment of ch. 67, Laws 1959.

The provision of the workmen's compensation statute applicable to the above cases provided benefits for injury to specific body members. Sec. 59–10–18, N.M.S.A. 1953. The statute was repealed by ch. 67, § 32, Laws 1959, and a completely new section enacted. Ch. 67, § 22, Laws 1959 (§ 59–10–18.4, N.M.S.A.1953, amended by ch. 151, § 3, Laws 1967). Notwithstanding important and significant changes in the language of the scheduled-injury provision enacted in 1959, the majority, nevertheless, see no change in the 1959 law despite the radically different language employed, and they interpret the present statute to also permit additional compensation for impairment to other parts of the body resulting solely from the injury to the scheduled member.

In view of the changed language of the 1959 statute, it becomes necessary to compare the language of § 17, ch. 113, Laws 1929 (§ 59–10–18, N.M.S.A. as amended by § 1, ch. 51, Laws 1933, § 9, ch. 92, Laws 1937, § 1, ch. 92, Laws 1947, § 1, ch. 51, Laws 1949, and § 1, ch. 205, Laws 1951) with that of the statute applicable to the instant case, § 22, ch. 67,. Laws 1959 (§ 59–10–18.4, N.M.S.A.1953).

Section 59–10–18(b) (repealed) provided for the compensation allowable for injuries to scheduled members and so far as pertinent, read: "For disability partial in character but permanent in quality, such compensation shall be measured by the extent of such disability." (Then follows the schedule.)

With respect to the loss of a second scheduled member, § 59–10–18 (repealed) provided:

"The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any two (2) thereof in the absence of conclusive proof to the contrary, shall constitute total disability, permanent in character; PROVIDED, that the employer shall not be liable for compensation for total disability if the loss of one (1) arm, foot, leg, or eye occurred prior to such accident, but in that event compensation shall be paid only in accordance with the schedule herein for partial disabilities but the definitions of total disability contained in this paragraph shall not be exclusive of other cases of total disability."

Interpreting the above statutes, in force when the accidents in the cases cited above occurred, we held that additional compensation was allowable for impairment to other parts of the body where such impairment or disability extended to non-scheduled parts of the body as a result of the injury to the specific member.

The statute was not merely amended— it was completely repealed and an entirely new scheduled-loss section enacted. The new section reads:

"*59–10–18.4. Compensation benefits— Injury to specific body members.* A. For disability resulting from an accidental injury to specific body members including the loss or loss of use thereof, the workman shall receive * * * not to exceed a maximum compensation of thirty-eight dollars ($38.00) a week for the following periods:"

Section 3, ch. 151, Laws 1967, amended § 59–10–18.4 only by increasing the amount of compensation to $45.00 per week.

The comparable provision for loss of a second specific body member, § 59–10–18.4 (D) was likewise meaningfully changed so that it now reads:

"D. The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any two [2] of them, in the absence of conclusive proof to the contrary, constitutes total disability, permanent in character; provided, the employer shall not be liable for compensation for total disability if the loss of one [1] arm, foot, leg or eye occurred before the accidental injury for which claim is made, but in that event compensation shall be paid only in accordance with the schedule set forth in subparagraph A of this section."

The fundamental rule of statutory construction is to ascertain and give effect to the intention of the legislature. State v. Chavez, 77 N.M. 79, 419 P.2d 456; Montoya v. McManus, 68 N.M. 381, 362 P.2d 771; Janney v. Fullroe, Inc., 47 N.M. 423, 144 P.2d 145. Statutes are to be read and given effect as written, that is, the legislative intent is to be determined primarily by the language of the act. De Graftenreid v. Strong, 28 N.M. 91, 206 P. 694; George v. Miller & Smith, Inc., 54 N.M. 210, 219 P.2d 285; Albuquerque Bus Co. v. Everly, 53 N.M. 460, 211 P.2d 127. Words used in a statute are to be given their ordinary and usual meaning unless a different meaning is clearly indicated. Gonzales v. Oil, Chemical and Atomic Workers Int'l Union, 77 N.M. 61, 419 P.2d 257; Torres v. Gamble, 75 N.M. 741, 410 P.2d 959. Furthermore, we are committed to the rule that it is important in construing legislative intent to examine the history and historical background of the legislation, that is, to compare the statute being considered with prior statutes on the same or similar subject matter. Bradbury & Stamm Constr. Co. v. Bureau of Revenue, 70 N.M. 226, 372 P.2d 808; Munroe v. Wall, 66 N.M. 15, 340 P.2d 1069;

State v. Prince, 52 N.M. 15, 189 P.2d 993; James v. Bd. of Com'rs, 24 N.M. 509, 174 P. 1001; State ex rel. Lorenzino v. County Com'rs, 20 N.M. 67, 145 P. 1083, L.R.A. 1915C, 898; Sutherland, Statutory Construction (3d Ed.) Vol. 2, § 5002.

A comparison of the repealed scheduled-loss provision (§ 59–10–18, N.M.S.A.1953) and the 1959 enactment of a new scheduled-loss section discloses that the old or repealed section provided that for such loss of a specific body member, "such compensation shall be measured by the extent of such disability" without limitation as to impairment of other parts of the body resulting from the injury to the specific member, that is, the scheduled-injury provision prior to repeal expressly provided that compensation for injury to a specific member "shall be measured by the extent of such disability." Thus, if the injury to the specific member resulted in disability to other parts of the body, compensation for such additional disability was permitted under the language of the old statute. Our decisions necessarily so interpreted the statute in cases arising prior to 1959. The 1959 statute (§ 59–10–18.4, N.M.S.A.1953), however, expressly limits the amount of compensation not only for the loss or loss of use of a specific body member, but in addition, by express, clear and unmistakable language limits recovery for any *disability resulting from such injury to a specific body member* to that provided in the schedule for loss or loss of use of the specific body member so injured.

It is difficult to conceive how the legislative intent to limit compensation for *any disability resulting* from the loss or loss of use of the specific body member to the amounts provided in that section could have been more clearly expressed. The comparison of the repealed provision and the newly enacted statute makes it at once apparent that whereas under the old law all *disability* resulting from an injury to a specific member was compensable in addition to that provided for injury to the specific member, and that the new 1959 enactment limited all *disability* resulting from an injury to a member

to that provided in the schedule for injury to that member.

It is not disputed that the claimed impairment to the claimant's body as a whole (the compensation neurosis) *resulted* solely from the injury to the second scheduled member (the right eye), and that there was no injury to any other part of his body. (For the distinction between "compensation neurosis" and "traumatic neurosis" see the dissent in Ross v. Sayers Well Servicing Co., 76 N.M. 321, 414 P.2d 679.) The trial court, by an amended finding of fact, specifically found:

"3. That the injury to plaintiff's right eye resulted from a piece of metal becoming lodged in the right eye, and on that date, namely, February 10, 1964, plaintiff did not suffer any other physical injury to any other part of his body or any emotional or mental injury affecting his body as a whole; and that it was not until sometime after the accident when the sight in plaintiff's right eye was materially affected and diminished, that the emotional instability and depression reaction followed because of the loss of the functional ability to get around; the worry about blindness; and the worry about financial obligations."

The mere statement by the majority, that the scheduled-loss provision of the act was not intended to prevent a larger recovery where a part of the body, in addition to the injured member "is affected as a *result* of the accident and injury to the scheduled member," completely ignores the express and unequivocal language of the legislature saying that all disability *resulting from* the injury is limited to the amount provided for loss or loss of use of the specific member. The majority have thus judicially repealed the term "resulting from," as essential part of the legislative act.

It is true that Salome v. Eidal Mfg. Co., 75 N.M. 354, 404 P.2d 308; Jensen v. United Perlite Corp., 76 N.M. 384, 415 P.2d 356; and Casados v. Montgomery Ward & Co., 78 N.M. 392, 432 P.2d 103, concerned impairment to other parts of the body resulting from injuries to specific body members, but apparently the language of the 1959 enactment and its difference from that of the prior repealed statute was neither called to this court's attention nor noticed by the court. In view of the fact that the changed language above pointed out, in the present statute was not noticed nor interpreted, those decisions do not support the construction given to the 1959 statute by the majority.

The injury here was the loss of use of the workman's second eye, or the loss of the use of a second specific member. We have not heretofore had occasion to construe the second or successive injury of the workmen's compensation law. The statute, in this respect, deals with successive disabilities or the successive-injury problem as it is related to loss of specific members. Absent an apportionment statute, the general rule is that the employer becomes liable for the entire disability resulting from a second or successive injury. 2 Larson, Workmen's Compensation, § 59.10. Larson, at the same section, says there are three approaches to the problem: "first, the 'full responsibility' rule * * * second, apportionment statutes, under which the employer pays only for the single member lost in his employment, and third, second-injury funds * * *." New Mexico has adopted the apportionment method.

It is a matter of general knowledge that unrestricted application of the doctrine of liability of the employer for all impairment resulting from the second injury is deemed to discourage hiring of physically handicapped and disabled persons. See Subsequent Injuries Fund v. Industrial Accident Comm., 39 Cal.2d 83, 244 P.2d 889; Leonard Rehabilitation, U. S. Dept. of Labor Bulletin 261; Workmen's Compensation Problems, 106, 111–112, 114 (1963). It seems clear to me that it was one of the goals of the New Mexico Legislature to encourage the hiring of physically handicapped and disabled persons by specifically limiting the employer's liability for successive injuries to specific members. The interpretation by

the majority will necessarily destroy the intended benefit.

Applying the well-established rules of statutory construction to which this court is committed, it will be observed that the repealed statute (§ 59–10–18, N.M.S.A. 1953), after saying that loss of two specific members shall constitute total disability and providing that the employer shall not be liable for total disability if the loss of one member occurred in a prior accident, went on to say: "* * * but the definitions of total disability contained in this paragraph shall not be exclusive of other cases of total disability." Thus, not only because the scheduled-loss provision of the repealed statute did not limit recovery for other disabilities *resulting from* a specific-member injury to the scheduled amount, but expressly authorized additional compensation for disability to other parts of the body resulting from an injury to a specific member, measured by the extent of the workman's disability, it is clear that the prior act authorized the larger recovery. The omission of the quoted clause indicated an intent by the legislature to change the meaning of the provision. Certainly that omission together with the change in language of the first clause of the scheduled-injury section providing that the scheduled amount shall be the compensation for all "disability resulting from an accidental injury to specific body members" makes clear the intent to eliminate the authority to award total disability compensation for an impairment to other parts of the body resulting from an injury to the scheduled member.

It will be observed that the legislature, in writting the proviso contained in § 59–10–18.4(D), supra, was not content with merely saying that compensation should be paid for a second injury to a specific member in accordance with the schedule for loss of such member; the legislature also modified and limited the amount of compensation that could be awarded for a disability resulting from an injury to or loss of such second specific member by the word "only." Applying the well-established rule of this jurisdiction, that the legislature is presumed to have employed the words used in a statute advisedly and intentionally and that such words are to receive their usual and ordinary meaning, we find that the word "only," as used in this clause, is a restrictive word—a word of limitation. Cummings v. Lockwood, 84 Ariz. 335, 327 P.2d 1012; Dolan v. Hoosier Cas. Co., 252 Iowa 1188, 110 N.W.2d 334. "Only" is a word of restriction as to that which it qualifies and is a word of exclusion as to other things. White Stores, Inc. v. Atkins, 202 Tenn. 180, 303 S.W.2d 720, 726. "Only" means exclusively, solely, merely, for no other purpose, at no other time, in no other manner. Greer v. Chelewski, 162 Neb. 450, 76 N.W.2d 438; State ex rel. Fatzer v. Anderson, 180 Kan. 120, 299 P.2d 1078, 1084. Black's Law Dictionary (4th Ed.) 1951. Section 59–10–18.4(D), supra, after saying that an "employer shall not be liable for total disability" in the case of a second specific member loss, concludes with: "* * * but in that event" compensation shall be paid *"only* in accordance with the schedule set forth in subparagraph A of this section." (Emphasis ours.) Granting an award in excess of the amount set forth in the schedule completely ignores the express limitation written into the statute by use of the word "only."

Thus, both because the statute limits recovery for the loss of a second member in a second accident to the amount specified in the schedule for the loss of such member; and expressly provides that the amount specified in the schedule shall be the limit of recovery for all disability resulting from injury to the scheduled member, there can be no additional recovery for impairment to other parts of the body resulting solely from the loss of a second scheduled member. Any other construction would not only be directly contrary to the expressed limitation of the legislative enactment but would render the section concerning loss of a second member a nullity.

I think there are circumstances under which the statute would authorize an award for impairment to other parts of the body, in addition to the amount specified for loss of a second specific member. For instance, if in addition to an injury to a specific member there is a separate and distinct injury to another part of the body— not one *resulting from* the injury to the member as in this case—such additional and separate injury might form the basis for additional compensation. This is because there would be two separate injuries rather than the one injury found by the trial court in this case.

The trial court's finding 3 that the workman did not suffer any other physical, emotional or mental injury at the time of the accident, affecting his body as a whole, and that it was not until later that the loss of functional ability to get around, worry about blindness and financial obligations, resulted in the compensation neurosis, makes it abundantly clear that the neurosis resulted solely from the injury to the second specific member. Under those circumstances, the legislature expressly limited compensation to that provided in schedule A of § 59–10–18.4, supra, plus the amount for the healing period.

For the reasons stated, I must dissent from the opinion of the majority.