459 P.2d 135

**SPRINGER CORPORATION, Plaintiff-Appellant,**

v.

**AMERICAN LEASING COMPANY, Defendant-Appellee.**

**No. 8803.**

Supreme Court of New Mexico.

Sept. 22, 1969.

Keleher & McLeod, T. B. Keleher, Patrick W. Hurley, Albuquerque, for plaintiff-appellant.

Modrall, Seymour, Sperling, Roehl & Harris, Peter J. Adang, Albuquerque, for defendant-appellee.

## OPINION

WATSON, Justice.

This is an appeal from a declaratory judgment against Springer Corporation in an action it brought to determine its liability to reimburse American Leasing Corporation for taxes on rentals of personal property paid under § 72–16–4.5, N.M.S.A. 1953 Comp. (now repealed).

Either appellant Springer has not complied with the requirements of our Rule 15(16) (b) and (c), § 21–2–1(15) (16) (b) and (c), N.M.S.A.1953 Comp., in that it has failed in its brief to make any

reference to a finding of fact of the trial court which is challenged, or else it did not intend to challenge any finding. In either event, the effect is the same. The trial court's findings are conclusive on appeal. Giovannini v. Turrietta, 76 N.M. 344, 414 P.2d 855 (1966); Michael v. Bauman, 76 N.M. 225, 413 P.2d 888 (1966).

We need only determine if the trial court's conclusions and the judgment are correct, based upon the facts found. Cooper v. Bank of New Mexico, 77 N.M. 398, 423 P.2d 431 (1966); Jontz v. Alderete, 64 N.M. 163, 326 P.2d 95 (1958).

We summarize the facts found by the trial court as follows:

1. Springer (plaintiff and appellant) entered into seven written agreements with American (defendant and appellee) which were made part of these findings. The first agreement is dated November 12, 1958, and the last one is dated March 1, 1965. There are two types of printed forms used for the agreements. The first three agreements are on forms entitled "Lease," and the last four are on forms entitled "American Leasing Corporation Standard Truck Lease." On termination, the "leased" property was to be returned to the vendors, not the Lessor. The two types of forms were similar but not identical. The "Standard Truck Lease" provides for re-lease or sale upon breach and termination and includes a reasonable attorney's fee in its recital of damages; the "Lease" form does not so provide. In all of the agreements American, as Lessor, purports to lease trucks and attached equipment to Springer as Lessee. The make, model, motor number, serial number, body or special equipment, and monthly rental are set forth in an attached "Schedule A." There is only one difference in the "Schedule A" forms; those used on the four Standard Truck Leases set forth the "Stipulated Loss Value" of each piece of equipment in a column next to the monthly rental column, and the others do not.

(a) All the agreements require Springer to pay a gross rental in monthly payments together with personal property taxes, sales tax, use taxes, *tax on lease rentals*, and all other applicable taxes except net income and franchise taxes. (Emphasis added.) Springer is required to pay the license plate and registration fees for the trucks and to repair and maintain all the equipment and carry the insurance on the trucks and equipment, including public liability, collision, and property damage, and to save American regardless of insurance coverage. American has no obligation if a unit fails to function, but does make available the manufacturer's standard warranty to Springer. Upon destruction of the property or termination of the "lease," as to one unit, the unpaid rentals as to it are to be deleted and the equipment returned to the original vendor. If Springer defaults in rental payments, American can declare all rentals due and payable, take possession of the equipment, and exercise any other lawful remedies.

(b) The first three leases have an initial term of 50 months with a right to renew up to 12 additional months at $5.00 per month, the rental for the entire renewal period to be payable in advance. The "Standard Truck Lease" provides for an initial term of 60 months and grants a renewal privilege of up to 36 additional months for a "rental" of $10.00 yearly, the rental for the entire renewal period to be payable in advance. The total "Stipulated Loss Value" of the equipment set out on the first three "Standard Truck Leases" is 18 per cent less than the gross rental for the initial term of the lease and is 20 per cent less than the gross rental on the most recent of these.

(c) The "Schedule A" attached to the agreements all bear an assignment of the "lease" executed by American to a bank reciting that a chattel mortgage has been given to a bank upon the "leased" property, and that all rentals and other rights under the lease are assigned to secure any obligation of American to the bank.

Springer acknowledges notice of the assignment and agrees to pay all rentals direct to the bank.

2. At the time the agreements were entered into, the parties intended them to be leases and not conditional sales contracts. The written agreements are complete and unambiguous; and the intention of the parties is ascertainable from the instruments themselves. On November 10, 1965 the New Mexico Bureau of Revenue assessed a gross receipts tax on the lease rental payments made by Springer to American under the leases, and on November 24, 1965 American notified Springer of this deficiency assessment and gave Springer ample opportunity and time to prevent payment by American and to take action to prevent deficiency assessment and to participate in a decision as to the validity of the assessment. Springer failed to take action and on December 1, 1965, American paid the tax then due in the sum of $8,598, and has paid the taxes on the rental since in the sum of $12,496.65.

3. The assessment was valid and American was entitled to reimbursement from Springer for the total amount paid plus interest at six per cent from October 31, 1965, together with reasonable attorney's fees, as provided by the agreement which, under the circumstances, were $2,500.

Based upon these findings, the trial court concluded that the agreements were leases; that the tax on the rentals was valid; that Springer was obligated to pay it; and that American was not obligated to make application for refund, but was entitled to reimbursement from Springer plus interest and attorney's fees. Judgment was entered against Springer accordingly.

Appellant compares the leases here with the "master lease" described in Transamerica Leasing Corporation v. Bureau of Revenue, 80 N.M. 48, 450 P.2d 934 (Ct. App.1969), which the Court of Appeals held was a security interest intended as a loan and not a lease. The agreements were similar in many respects. Appellant points out in the lease in the Transamerica case, supra, that upon completion of the scheduled payments the "lessee" had an option to purchase the "leased" equipment for $1.00, and appellant states that here it had the option to purchase the vehicles covered by its "lease" from the vendors for the sum of $200.00 upon the termination of the "lease." There is, however, no such option in any of the seven "leases" here involved; nor did the trial court find that there is an option to purchase nor an obligation to purchase.

Appellant's first point is that the trial court erred in ruling that the seven agreements here involved were leases and not conditional sales contracts. All the authorities that appellant cites, with the exception of the case of In re Transcontinental Industries, Inc., 3 U.C.C.Rep. 235 (U.S.D.C. Ga.1965), hold that if the "lessee" is obligated to purchase the equipment, or if it has an option to purchase the same, this fact is of great importance in determining (if not determinative) whether the agreement is a lease or a security agreement or a sale. In Transcontinental Industries, Inc., supra, there was no option, but there was a finding that it was customary upon termination of the "lease" to give the "lessee" the first opportunity to purchase the equipment; from this and other circumstances the "lease" was held to be a security agreement.

There was no option to purchase in the Springer "leases," which were found by the trial court to be complete and unambiguous. There was no finding of an option given by the vendors, nor was there any finding that it was customary to give the "lessee" the first opportunity to purchase the equipment on termination of the "lease" as was the case in Transcontinental Industries, Inc., supra. Neither was there any finding of any obligation on Springer's part to purchase the equipment.

The trial court's conclusion that the seven agreements were leases was correct under the findings made by it and uncontested by appellant.

Under its Point II, appellant contends that the instruments designated "Lease" and "Standard Truck Lease" are not subject to the New Mexico Emergency School Tax or the City of Albuquerque Municipal Sales Tax. Under Point III, it asserts that American arbitrarily paid the tax and Springer was never given an opportunity to contest the validity of the tax. Appellant's Point IV is that the court erred in refusing the tender of proof as to the intention of the parties.

Perhaps we need not again point out that nowhere in appellant's brief are the trial court's findings, material for the review here sought, summarized with references to the transcript, nor is any finding of the trial court challenged, other than informally. Nowhere does appellant claim error by reason of the refusal of the court to make a particular finding, much less make reference to the transcript for such refused finding, or present a summary of the facts which appellant believes should have been found, as required by Rule 15 (16) (b) and (c), supra. Thus our consideration of appellant's Points II, III, and IV is relegated to the facts as found by the trial court, which clearly sustain its conclusions and the judgment on the matters raised by these points.

Appellant concedes that if the seven agreements are in fact leases, then the tax assessed on the rentals received was proper. Our ruling on Point I, based upon the facts found by the trial court, that they are in fact leases, thus disposes of Point II. Appellant's Point III, that "American arbitrarily paid the tax and Springer was never given the opportunity to contest the validity of the tax," is eliminated by the uncontested finding to the effect that Springer was given ample opportunity to prevent the deficiency assessment and payment thereof by American.

As to Point IV, we assume that the tendered proof refused by the trial court was that offered at the trial to the effect that the president of Springer Corporation would testify that appellant's intent was that the arrangement with American was only a means of financing the purchase of the vehicles, and that upon completion of the lease payments and an additional nominal sum, title would be transferred to Springer, and that the lease arrangement was more financially economical than would be the obtaining of loans from lending institutions in Albuquerque. The trial court, however, found that the written agreements were complete and unambiguous, and that the intention of the parties was ascertainable from the instruments themselves. Thus, parol evidence as to the intent of the parties would be clearly inadmissible. Armijo v. Foundation Reserve Insurance Co., 75 N.M. 592, 408 P.2d 750 (1965). Appellant's Point IV must, therefore, be resolved against it for this reason alone.

We hold, therefore, that the uncontested findings of the trial court clearly sustain its conclusions and its judgment is affirmed.

It is so ordered.

COMPTON and TACKETT, JJ., concur.